## Sale, et al. v. Smith & Nixon Company, et al.

### (Decided February 23, 1912.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

Lease—Covenant Not to Sublease Without Written Consent—When Subleasing From Acts of Lessor—Estoppel.—Notwithstanding covenants in a lease, providing that the lessee should not sublease the property or allow it to be put to any other use than that allowed by the lease, without the written consent of the lessor, where, as in this case, it is made to appear that the subleasing of a part of the leased premises resulted from and was procured by the representations and acts of the lessor, it was properly held that she is estopped to complain that such subleasing of same was not consented to by her in writing.

CHAS. H. SHIELD and BENJAMIN F. WASHER for appellant.

PERCY N. BOOTH, HELM BRUCE and BRUCE & BULLITT for appellee, Smith and Nixon Company.

BRADLEY & CURETON for appellees, Rogers & Krull.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

On October 25th, 1907, the appellant, Virginia M. Sale, by a writing of that date leased to the appellee corporation, Smith & Nixon Company, a lot and building in the city of Louisville, of which she is the owner. The property is situated on Fourth street, south of Walnut, and adjoining the Seelbach Hotel. The lease was for a term of twenty years, beginning January 1st, 1908, at an agreed rental of $12,800 per annum, payable in monthly installments of $1,066.66 2-3, the lessee also to pay all taxes, insurance and repairs upon the property

during the continuance of the lease. Among the many covenants contained in the lease are the following:

"1. The premises or any part thereof, or the term in whole or in part, shall not be assigned, transferred or set over by the act of the lessee, by process or operation of law or in any other manner whatsoever, without the written consent of the lessor; and for a violation of this stipulation, in addition to the forfeiture provided in the seventh stipulation, the rent shall be doubled while the default continues.

"2. It being expressly agreed to and understood that the said property is to be used as a piano store and for the sale of stringed instruments, sheet music, for studios and for all legitimate musical business, and not otherwise.

"3. The lessee shall have the privilege during the continuance of this lease, after obtaining a written consent thereto, from the lessor, to make such permanent alterations at its own expense upon the building as it shall deem best to fit it for its business."

Appellee, Smith & Nixon Company, took possession of the leased premises January 1st, 1908, and has continuously held and occupied same since that date, conducting therein its business of selling pianos, stringed instruments, sheet music, and other things appertaining to such a business. In June, 1909, the Smith & Nixon Company, by written contract, sublet to the appellees, Rogers & Krull partners, conducting in that name and style, the jewelry business, a part of the ground floor of the building for a term of five years from July 1st, 1909, at a rental of $5,000 per year, payable in monthly installments of $416.66 2-3. Before removing their goods and business to the building in question, Rogers & Krull, at their own expense and at a cost of more than $3,000, made some necessary improvements in and upon the part thereof leased by them of the Smith & Nixon Company.

On December 8th, 1909, about five months after the appellees, Rogers & Krull, took possession of that part of the building leased by them of the appellee, Smith & Nixon Company, appellant instituted this action in equity against the Smith & Nixon Company and Rogers & Krull, charging a violation by them of the covenants of the lease under which the Smith & Nixon Company obtained of her the leased premises, demanding double rent of the Smith & Nixon Company for the time Rogers

& Krull occupied a part thereof under their lease from the Smith & Nixon Company; that the latter lease be cancelled and Rogers & Krull evicted from the property, and also praying an injunction against the continued violation by the appellees of the covenants of the lease from her to the Smith & Nixon Company.

The grounds alleged in the petition for the relief prayed were: 1st, That the subleasing of the property to Rogers & Krull violated a covenant of the lease from her to the Smith & Nixon Company, which provides that there can be no subleasing of the property without her written consent, which was not given. 2nd. That the use of a part of the building by Rogers & Krull as a jewelry store violated a covenant of the lease which allows it to be used only for the business in which the Smith & Nixon Company is engaged. 3rd, That the alterations made in the building by Rogers & Krull violated a covenant of the lease which provides that such alterations can not be made without her written consent, and such consent was not given.

The answers of appellees denied the violations of the lease contract alleged, and averred that the lease in question does not prohibit subletting of the property without the written consent of the lessor; moreover, that the subletting of a part of the property to Rogers & Krull and the use they made of same were not only consented to by appellant, but that she actually and actively brought the Smith & Nixon Company and Rogers & Krull together and procured the making of the sublease. If appellant accomplished the subleasing of the property in the manner charged, she is estopped to complain that the sublease constituted a violation of the covenants of the lease under which the Smith & Nixon Company obtains the property from her, and also estopped to complain of the use made of a part of the building by Rogers & Krull, or of the alterations anl improvements made in and upon the property by them, as they resulted from her procuring the sublease to them, and besides, were necessary to their use of the property in the business for which it was obtained by them.

The estoppel was properly pleaded in the answers and if sustained by the evidence appearing in the record, it will afford ample ground for affirming the judgment, thereby rendering unnecessary consideration of the question whether the lease, in terms, prohibits subleasing of the premises.

We may concede that the lease, in terms, forbids, unless consented to by the lessor in writing, the use of the leased premises for any purpose other than the business of selling pianos, stringed musical instruments and sheet music; and may even further concede for the sake of the argument, that it forbids subletting of the property without the written consent of the lessor, yet such stipulations may be waived by the parties. As well argued by counsel for appellees, "It is a common thing for insurance policies to provide that the contract shall not be in any wise altered, or that certain things shall not be done, without the written consent of the insurance company, and yet it is an a, b, c proposition that provisions of this kind may be subsequently waived by the parties."

Mere verbal consent on the part of appellant to a subleasing of a part of the property to the appellees, Rogers & Krull, and to the use they have made of it, is but one of the elements that enter into the estoppel; in addition, were her numerous interviews with the appellee, Rogers, Davis, the vice president and, at the time, acting manager of the Smith & Nixon Company and Allen, a merchant having no connection with any of the parties, to each of whom she manifested her interest in the removal of Rogers & Krull to her building and her activity in bringing the contracting parties together that they might agree upon the contract by which her desire would be accomplished.

Her solicitude and activity in the matter were unceasing from start to finish. It is clear from the evidence that she first suggested to Rogers that he ought to arrange with the Smith & Nixon Company to occupy a part of her building, and portrayed to him the benefits that would result therefrom, both to that company and to the business of Rogers & Krull. In the interviews with Rogers she expressed her admiration of the chandeliers and other paraphernalia of his business and said they would adorn her building, and when he expressed a doubt of his ability to obtain the consent of the Smith & Nixon Company to a subletting of a part of the building to himself and partner, appellant in substance told him it could be done; that while the Smith & Nixon Company held a lease upon the building she was the "boss" and would see Davis, vice president and manager of that company, about the matter, and did later report to

Rogers that she had seen Davis and that the desired arrangement could be made.

It is equally patent from the evidence that appellant after her first interview with Rogers saw Davis; told him of her conversation with the former and advised him to sublet a part of the ground floor of her building to Rogers & Krull; at the same time telling him of the advantages that would result from such an arrangement.

Subsequently in other conversations with Davis, she urged him to sublet a part of the building to Rogers & Krull and. continued to urge Rogers also until the arrangement that resulted was consummated. Not only were these conversations with her proven by the testimony of Rogers and Davis, but also by Krull who, on one occasion, heard her talking with Rogers upon the subject of removing their place of business to her building. The testimony of Davis and Rogers to the effect that they were brought together by appellant and that she procured the subleasing of a part of the building to Rogers & Krull was corroborated by that of Allen to whom she appealed for assistance in carrying out her purpose. The testimony of Allen also explains appellant's motive, as it appears from what she said to Allen that she owned $5,000 of the stock of the Smith & Nixon Company, and as Allen owned a small amount of stock therein she informed him that the stock was not paying the dividends that should be received by the holders and that the rent of $5,000 per annum that the Smith & Nixon Company would receive from Rogers & Krull by the subleasing of a part of the building to them, would enable it to pay a dividend upon the common stock of ten per cent. which would greatly benefit the stockholders. In our opinion the evidence leaves no doubt that appellant procured the subleasing of the property to Rogers & Krull. The latter at first were reluctant to enter into the arrangement as they had already leased from Mc-Knight a building for their business, but in view of the urging of appellant and the fact that the subleasing of a part of her building gave them a longer term than they would have secured under the lease from McKnight, they with the consent of McKnight, abandoned that lease and secured the one from the Smith & Nixon Company. In other words, they were induced by the representations and acts of appellant to sublease from the Smith & Nixon Company.

It is true appellant denied in toto that she made any

such suggestions, statements or representations to either Davis or Rogers, as testified by them; and also denied the conversation related by Allen, but in view of the reasonableness and consistency of their testimony, together with the corroborating circumstances surrounding the entire transaction, we are bound to accept the truth of their testimony in preference to hers.

We have not overlooked the letters to Davis from her introduced in evidence, only one of which was written before Rogers & Krull moved into her building. In that letter she made the claim that she had not given her written consent to the subletting of a part of the property to Rogers & Krull, but she did admit therein that she had suggested to Rogers that he have a talk with the Smith & Nixon Company about renting a part of the store. It must be borne in mind, however, that this letter was written after the negotiations which appellant opened between Rogers and Davis had for the time being ended, Rogers being of the opinion that the amount of rent which Davis had demanded, namely $6,000 per annum, was too much. After this letter was written appellant had other conversations with both Davis and Rogers by which they were induced to again come together and as a result of these subsequent negotiations Davis reduced the rent to $5,000 per annum, upon his doing which, Rogers and Krull agreed to sublease the property and did so, all of which appellant was instrumental in bringing about; and in none of these conversations either before or after the writing of the letter referred to, did she intimate, either to Rogers or Davis, that her consent in writing would be required, or that she would refuse such consent. The other letters from her, introduced in evidence, were all written from California and after Rogers & Krull had taken possession of a part of the building under the sublease from the Smith & Nixon Company. Those letters, and particularly the first, written July 7th, 1909, making complaint of the subletting of a part of the property to Rogers & Krull, seem to us to manifest that they were written for the purpose of paving the way to the bringing of this action; at any rate, they do not, in our opinion, discredit the testimony of Davis, Rogers or Allen, which leaves no doubt in our mind of her having procured the subleasing of a part of the building to Rogers & Krull.

The equitable estoppel arising from this fact is a bar

to her right to recover in this action. In Jones on Land-lord and Tenant section 496, it is said:

"* * * If one party to a contract intentionally by language or conduct, leads the obligor to believe that he need not perform promptly, and that no advantage will be taken of the failure, it is equivalent to an express agreement to that effect, and is a waiver of the forfeiture. A lessor having, by his words and conduct, caused his lessees to believe that he would not enforce his forfeiture provided for in the lease would be equitably estopped from seeking to avail himself of the forfeiture, although the consent was not given in writing as required by the lease. The old maxim of the common law that an instrument under seal can not be varied or abrogated by words not under seal is not applicable. There is no question of any variation, or abrogation of the sealed instrument, but merely a waiver by the lessor of his right to declare a forfeiture thereunder. If the facts show a clear intention on the part of the lessor to waive his right of forfeiture, there is no reason why he should not be held to such waiver. The case is an appropriate one for the application of the doctrine of estoppel."

In section 473 the same author says:

"If an assignee is led to act on the assumption that the assignment will not be relied on as a ground for forfeiture, the lessor can not subsequently enforce the forfeiture. * * * By advising the prospective sub-tenant to lease from the lessee, the landlord estops himself from insisting on a covenant against subletting."

The same doctrine is announced with equal clearness in Underhill on Landlord and Tenant, section 466; and abundant authority to the same effect may be found in the decisions of the courts. Wertheimer v. Hosmer, 83 Mich., 56; Ky. Lumber Co. v. Newell, 32 R., 396.

The case of Able v. Wuesten, 143 Ky., 513, is not in conflict with the rule of law we have announced. That was an action for waste, and for forfeiture of the lease on account of alterations that wholly changed the character of the property. The forfeiture was adjudged, notwithstanding the verbal consent of the landlord to some, if not all, of the alterations made, but it was because parol consent to waste did not satisfy the requirements of section 2328, Kentucky Statutes, which provides:

"If any tenant for life or years, shall commit waste during his estate or term, of anything belonging to the

tenement so held, without special license, in writing, so to do, he shall be subject to an action of waste, shall lose the thing wasted, and pay treble the amount at which the waste shall be assessed."

Special license in writing, allowing the waste, is required under this statute. No such requirement is found in the statute with reference to the subleasing of real property. But only a consent in writing thereto when the term of the tenant is less than two years (section 2292, Kentucky Statutes), which, as well as a covenant of the lease requiring such written consent, may be waived whereas the special license required by section 2328 can not be waived by parol.

As previously indicated, this is not an action for waste, although the lease contains a covenant against waste. While the making of permanent alterations is alleged in the petition, it is in connection with a wholly different provision of the lease, viz.: One permitting permanent alterations to be made by the lessee upon the written consent of the lessor, which, as well as the written consent of the lessor as to the subleasing of the leased premises, as we have attempted to show, can be waived as was done by appellant in this case. The petition seeks a cancellation of the sublease from the Smith & Nixon Co. to Rogers & Krull, but instead of demanding a forfeiture of the lease from appellant to the Smith & Nixon Company it prays for its specific performance, and the only penalty demanded for the subleasing of a part of the building by the latter to Rogers & Krull, is the double rent for the time the sublease continued to run, which in this case, if allowed, would amount to approximately $29,000.

At most if appellant were given the relief prayed against Rogers & Krull, the judgment could only oust them from the property and compel the removal of the fixtures and improvements added by them to the part they have in possession. This relief, however, as already indicated, appellant under the facts of this case is estopped to claim.

The alterations made by Rogers & Krull consist of the addition to the building of two, short, wooden partitions, and of show cases, drawers and other paraphernalia necessary to their business. These alterations and improvements are not of a permanent character, do not injuriously affect the building, or lessen its value, and can be removed with little expense and without injury to

the building. Moreover, it would be the duty of Rogers & Krull, or of the Smith & Nixon Company, to remove these alterations and improvements at the termination of the former's lease and restore the building to its condition at the time a part thereof was subleased to Rogers & Krull; all of which must be done without expense to appellant.

Being clearly of opinion that the judgment of the circuit court properly determined the rights of the parties, it is hereby affirmed.

Whole court sitting except Judge Miller.