W. E. VENTERS et al., Appellants,

v.

Edna H. REYNOLDS, Appellee (two cases).

Edna H. REYNOLDS, Appellant,

v.

W. E. VENTERS et al., Appellees.

Court of Appeals of Kentucky.

June 2, 1961.

Rehearing Denied March 23, 1962.

O. T. Hinton, Hinton & May, Pikeville, for W. E. Venters and Lloyd Childers.

L. C. Farley, Charles E. Lowe, Francis M. Burke, Pikeville, for Edna H. Reynolds.

MONTGOMERY, Judge.

The three separate appeals here involve the litigation resulting from the execution of a lease by Edna H. Reynolds to W. E. Venters and Lloyd Childers, hereinafter referred to as lessor and lessees, respectively. The records have been consolidated for consideration. Various questions have been presented which will be considered chronologically in so far as is possible.

Lessor executed a written lease agreement dated September 17, 1953, by which she leased a lot to lessees for a period of five years with the right to extend for an additional fifteen-year period. The lot was located on the outskirts of Pikeville. It fronted on U. S. Highway 23. The rent was $75 per month. The lease prohibited any subleasing except by the written consent of the lessor.

Lessees were automobile dealers. They owned a smaller lot adjoining the leased lot. Shortly after the execution of the lease, lessees purchased a similar business which included a modern garage building and showroom located a short distance from the leased lot. They moved their business to this building and proceeded to drain and fill in the two unimproved lots for use as a used car lot. The cost of this improvement to the leased lot was disputed.

By a written instrument dated January 10, 1955, lessees permitted one Victor Tackett to use the front portion of the leased lot. The written instrument embodied an oral agreement under which Tackett had erected a drive-in restaurant. The instrument was recorded in the Pike county court clerk's office on May 18, 1955.

Tackett opened the drive-in restaurant on Election Day in November 1954 and operated it as such, with a large neon sign erected in front bearing his name and the words "Drive-in Restaurant." Lessor lived within a few hundred feet of the restaurant. She admitted that she knew Tackett was operating a restaurant but made no complaint at that time.

Sometime in 1955 lessees erected an addition to the restaurant. About a month before the January 29, 1957 flood, the restau-

rant building and its contents were seriously damaged by a fire. Repairs were made and business was resumed in due course. Another fire in February 1957 totally destroyed the building and contents, Tackett collected the insurance on the part of the building erected by him, and lessees collected the insurance on the addition built by them.

Under the agreement with lessees, Tackett paid rent to them, which was increased when the addition to the building was added. Tackett stopped paying rent when the building burned. Lessees paid the monthly rental called for under their lease to lessor from the beginning of the lease up to and including February 16, 1957, all of which was accepted by the lessor.

On January 21, 1957, lessor filed an action in which she sought to recover damages for failure of lessees to erect a building on the lot and sought to have the lease cancelled or forfeited for breach of covenant against subleasing without her consent. The first claim has been abandoned. By amendment, lessor sought to collect other damages and to share in the proceeds of the insurance money collected.

After the filing of the action, lessees tendered rental checks each month, which lessor did not attempt to cash until after a judgment had been rendered in January 1958. Lessees then stopped payment on the checks and, apparently, neither party has made any beneficial use of the lot since January 1958.

The Chancellor found that the lessees violated the terms of their lease by subletting a portion of the leased premises to Tackett, that the sublease was terminated by the destruction of the building by fire, and that the breach of the lease agreement was "not such as to require a forfeiture of the lease." The judgment denied a forfeiture or cancellation of the lease but awarded lessor $1,470 in damages. The failure to adjudicate any other claims for damages in the action is not presented.

Lessees appeal from this judgment and urge that: (1) The Tackett agreement was an assignment instead of a sublease; (2) a breach of covenant or restriction against subleasing did not entitle lessor to a forfeiture or cancellation of the lease; (3) lessor's acceptance of rent constituted a waiver of any right of forfeiture or claim for damages; and (4) it was error to award the $1,470 damages.

The written instrument executed by lessees and Tackett by its terms indicates that it was intended as a sublease rather than an assignment. It is twice referred to therein as a sublease and twice as a lease and uses the words, "let, lease and demise." There is no language used to indicate that an assignment was intended.

The particular words employed are not necessarily determinative of the nature of the instrument. An assignee in whole or in part under a lease is liable to the landlord for the payment of rent, while a sublessee is liable only to the lessee. Consolidated Coach Corporation v. Consolidated Realty Co., 251 Ky. 614, 65 S.W.2d 724.

Both parties rely on Cities Service Oil Co. v. Taylor, 242 Ky. 157, 45 S.W.2d 1039, 1040, 79 A.L.R. 1374, in which an assignment of a lease and a subletting are defined and distinguished thus:

"The distinction depends upon the quantity of interest that passes by the transfer, and not upon the extent of the premises involved. An assignment transfers the entire interest in the leasehold, or, if the assignment be merely pro tanto, it passes the entire interest in such part of the demised premises.

"A subletting is a grant of a portion of the term, with some reversionary interest in the sublessor."

Under the agreement, Tackett made monthly rental payments to lessees, who retained the right to extend the lease with lessor for an additional term. Lessees col-

lected additional rent for the addition to Tackett's building. The Tackett agreement reserved to lessees a right of re-entry and possession for a breach of covenant in default of payment of rent.

The entire interest of the lessees to the portion of the lot involved did not pass to Tackett, and the lessees retained certain reversionary interests and collected the rent payable. Under the definitions given, it is concluded that the Tackett agreement was a sublease instead of an assignment. Bowling v. Garber, 250 Ky. 137, 61 S.W.2d 1102; Coleman v. Owens, Ky., 254 S.W.2d 341.

■ The subleasing of a portion of the lot without the consent of the lessor constituted a ground of forfeiture at the option of the lessor. The acceptance of rent from the lessees with knowledge that the sublease covenant had been violated, as the lessor here must have known, was, in effect, a waiver of her right to insist on a forfeiture or cancellation of the lease. Sale v. Smith & Nixon Co., 147 Ky. 146, 143 S.W. 737; Miller v. Tutt, Ky., 264 S.W.2d 649. Cf. Miller Dairy Products Co. v. Puryear, Ky., 310 S.W.2d 518, wherein lessor was held not to have waived the right to declare a forfeiture by previous acceptances of late rental payments. See also Citizens Fidelity Bank & Trust Co. v. Norfleet, Ky., 252 S.W.2d 54, in which the Cities Service Oil Company decision was approved.

In the second appeal, lessor questions the failure to forfeit the lease. This has been treated as a cross-appeal in which no merit is found for the reasons stated.

■ The lessor was awarded the sum of $1,470 as damages against lessees as the difference in the rentals collected by lessees from Tackett and the rental paid by lessees to lessor. Nowhere in lessor's complaint, which was twice amended, was any such claim presented. The judgment is silent as to the theory on which such recovery was permitted.

It is suggested in lessor's brief that lessor is entitled to the damages since "she might have demanded an increase in rental payment to her in consideration of her consent to such sublease." No authority is cited by lessor to sustain this contention. The answer to the contention is that lessor was paid the rental to which she was entitled under the lease, that she waived the right to claim a forfeiture and the benefit of any such breach, as has been pointed out, and that no such claim was ever asserted prior to filing an action or in the pleadings of the action. The judgment is erroneous in the award of such damages.

On July 3, 1958, lessor sued lessees again and sought to recover accrued unpaid rentals from February 1957, possession of the property, damages for wrongful detention of possession, and cancellation of the lease. Lessees answered with a denial, asked that the action be abated pending determination of the appeal in the first action, and by counterclaim sought recovery of the cost of improving the lot and the loss of use of the profits therefrom. Judgment based mainly upon a stipulation was entered by which lessor recovered $1,500 as the balance of the unpaid rent for the five-year term. The court found that lessees by a failure to pay the accrued rent due on September 17, 1958, were not entitled to renew and extend the lease and adjudged the lease to be terminated.

The lease provided that the original term of five years should end on September 17, 1958, and that "the lessees shall have the right, option and privilege of renewing and extending this lease by fifteen (15) successive terms of one year each immediately after the said original term, which renewals shall be exercised by the lessees remaining on the premises until the 17th day of September of the year 1958, and otherwise abiding by the terms hereof, * * * no other notice of intent to renew said lease shall be required of lessee." By a letter dated September 17, 1958, lessees tendered a check of $80 to cover rent for September

15 and 16, 1958, and for one month in advance beginning September 17, 1958, and gave notice of their intention to extend the lease. The tender was refused.

■ According to the stipulation, lessees on September 17, 1958, were in default in the payment of rent in the sum of $1,500. The trial court so found. Lessees contend that the continued insistence of the lessor upon forfeiture of the lease deprived them of the beneficial use of the premises and amounted to a breach of the covenant of quiet and peaceable possession, which was a constructive eviction and excused their failure to pay rent. Lessees admitted that they have remained in "technical possession" of the premises. To constitute a constructive eviction, the acts of the landlord must be such as will justify and warrant the tenant in leaving the premises and there must be an abandonment in fact. Estes v. Gatliff, 291 Ky. 93, 163 S.W.2d 273. Lessees cannot thus excuse their failure to pay rent since there was no actual surrender of the premises.

■ Such failure was in violation of the provision of the lease that entitled lessees to extend by "abiding by the terms" of the lease. Payment of rent was one of the terms lessees should have fulfilled as a condition precedent to exercise of their right to extend the lease. Annotation, 172 A.L.R. 1436.

■ There is no merit in the argument that the destruction of the restaurant building by fire excused lessees' nonpayment of rent under KRS 383.170. The building destroyed was not leased by lessees from lessor. The statute did not apply.

The judgments and final orders involved in the three appeals are all affirmed except that part of the first judgment awarding Edna H. Reynolds the sum of $1,470 against W. E. Venters and Lloyd Childers which is reversed.