FIRST NATIONAL BANK & TRUST
COMPANY, et al. Plaintiffs–
Appellants

v.

MARTIN MARIETTA MATERIALS,
INC. Defendant–Appellee

No. 00–5324.

United States Court of Appeals,
Sixth Circuit.

Nov. 19, 2001.

---

* The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. On October 10, 2000, the parties agreed to have the matter finally disposed of by a magistrate judge.

Before COLE and RYAN, Circuit Judges, and WILLIAMS, Senior District Judge.*

WILLIAMS, Senior District Judge.

The appellants, First National Bank & Trust Company and others, appeal the district court's entry of summary judgment in favor of the appellee, Martin Marietta Materials, Inc. For the reasons set forth below, we affirm the district court's grant of summary judgment.

## I. BACKGROUND

First National Bank & Trust Co. of Carbondale, Illinois, Trustee of the Jones Family Trusts, and Glenn Jones, Trustee of the Eula Kathleen Jones Trust, ("the Jones Trusts"), and Martin Marietta Materials, Inc., ("Martin Marietta"), are successors in interest to a lease permitting Martin Marietta to operate the Three Rivers Quarry on property owned by the Jones Trusts in Livingston County, Kentucky. This lease was originally entered into in 1962 and has been amended on a number of occasions. (The lease agreement and all amendments will be collectively referred to as the "Lease.") The Lease grants Martin Marietta the right to mine limestone from the property in exchange for payments to the Jones Trusts. The Lease grants Martin Marietta the right "to quarry, take, mine and remove ... and to market the limestone...." The Lease also grants Martin Marietta "the right to use the surface of said Leased Lands in any way that it shall find necessary, expedient or convenient in the quarrying, mining, removing and preparing said limestone for market, and the transportation of same over and across" the leased property. The Lease also states: "Lessor shall have the full right to use any portion of the Leased Lands for any purposes other than those for which this and the Original Lease are made, so long as such use by Lessor, or its assigns, shall not interfere with or be inconsistent with the uses by Lessee hereunder." The Lease provides that, if the lessee should default under the Lease and this default is not cured within 30 days following notice of default, then all of the lessee's rights under the Lease shall terminate. The Lease also states: "Failure of Lessor to exercise the option [of termination upon default] herein given it or any right hereunder at any time or times shall not preclude Lessor from the exercise thereof at any subsequent time or times for any subsequent default."

---

* The Hon. Glen M. Williams, Senior United States District Judge for the Western District of Virginia, sitting by designation.

The quarry operations necessarily remove vast quantities of earth, waste rock and other materials, which are referred to as "overburden." In the past, the quarry operators have disposed of the overburden by placing it on fault lines, placing it above the 400–foot contour line on the leased property or placing it on property not owned by the Jones Trusts. The quarry operators also have, on occasion, given away dirt to local truckers and Livingston County.

In 1997, Martin Marietta entered into a sales agreement with a contractor to provide the limestone for a nearby bridge construction project. Martin Marietta also agreed to provide fill dirt to the contractor, if the contractor would remove the dirt. In early November 1997, one of the bridge project's subcontractors removed approximately 2,000 cubic yards of earth from the leased land. There is no dispute that representatives of the Jones Trusts knew of the earth removal at the time that it occurred. There also is no dispute that this earth was removed from an area which would eventually be mined, requiring its removal. The Jones Trusts accepted Martin Marietta's November and December 1997 lease payments after this earth removal occurred.

On January 16, 1998, the Jones Trusts notified Martin Marietta that it was in default of the Lease because of the earth removal. On February 10, 1998, Martin Marietta responded that it disagreed that any default had occurred based on the earth removal. On February 16, 1998, the Jones Trusts notified Martin Marietta that the trusts were exercising their right to terminate the Lease. Nonetheless, Martin Marietta continued to occupy and operate the quarry. Martin Marietta also continued to make lease payments, and the Jones Trusts continued to accept those payments, through July 1998.

On October 27, 1998, the Jones Trusts filed this case seeking a declaration from the district court that the Lease was properly terminated. The district court found that Martin Marietta had breached the Lease by marketing soil from the lease property. The court, however, concluded that the Jones Trusts had waived their right to forfeiture of the Lease by continuing to accept lease payments after this breach, and the court entered summary judgment for Martin Marietta.

## II. ANALYSIS

This court reviews grants of summary judgment de novo, under the same standard as the district court. *See Owens Corning v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania,* 257 F.3d 484, 490–91 (6th Cir.2001). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In reviewing a summary judgment, this court reviews the factual evidence and draws all reasonable inferences in favor of the non-moving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *B.F. Goodrich Co. v. United States Filter Corp.,* 245 F.3d 587, 591–92 (6th Cir.2001). To prevail, the nonmovant must show sufficient evidence to create a genuine issue of material fact. A mere "scintilla of evidence" will not suffice

for the non-movant to overturn the summary judgment, but instead, the non-movant must show evidence "on which the jury could reasonably find for the non-movant." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

The parties in this case concede that, since jurisdiction in this case is based on diversity, Kentucky law controls the substantive question at issue. *See, e.g., Davis v. Sears, Roebuck & Co.*, 873 F.2d 888, 892 (6th Cir.1989) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 73, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). The district court held that Kentucky law prevents a lessor from terminating a lease for breach of the lease when it has accepted lease payments from the lessee subsequent to and with knowledge of the breach. The district court also held that when Martin Marietta marketed soil from the leased premises it had breached the Lease, which reserved to the Jones Trusts all uses of the land other than the marketing and removal of limestone. Nonetheless, the district court held that, under Kentucky law, the Jones Trusts had waived their right to terminate the Lease by accepting lease payments with knowledge of Martin Marietta's alleged breach.

We hold that the district court properly interpreted Kentucky law to find that the Jones Trusts had waived any right to seek forfeiture of the Lease. Forfeiture of leases is not favored in the law, and courts should readily adopt any circumstances that indicate a waiver of forfeiture. *See* 49 AM. JUR. 2D *Landlord and Tenant* § 328 (1995); *see also Miller Dairy Products Co. v. Puryear*, 310 S.W.2d 518, 521 (Ky.1957). The general rule is that when rent is accepted by a lessor with knowledge of particular conduct which is claimed to be a default on the part of the lessee, acceptance of the rent constitutes a waiver by the lessor of the lessee's default. *See* 49 Am.Jur.2d *Landlord and Tenant* §§ 87,

330 (1995); 3 AM. JUR. PROOF OF FACTS 2D §§ 1–2 (1974).

The Kentucky Court of Appeals recognized this general rule in *Rich v. Rose*, 124 Ky. 669, 99 S.W. 953, 955 (1907). In *Rich*, the court recognized that receipt of subsequent rents by a lessor after knowledge of breach of a covenant or condition for which the lessor could enforce a forfeiture, effectively waives the lessor's right to seek forfeiture based on that particular breach. *See* 99 S.W. at 955. The court further stated that the question of the lessor's intention in accepting the rent is not material. *Rich*, 99 S.W. at 955. Furthermore, it appears that the Kentucky courts continue to follow this rule. *See Batson v. Clark*, 980 S.W.2d 566, 575 (Ky.Ct.App. 1998) (lessor waived right of forfeiture by accepting rent from sublessee with knowledge that a sublease had occurred in violation of the lease); *Venters v. Reynolds*, 354 S.W.2d 521, 524 (Ky.1961) (lessor waived right of forfeiture by accepting rent from lessee with knowledge that a sublease had occurred in violation of the lease); *Simmerman v. Fort Hartford Coat Co.*, 310 Ky. 572, 221 S.W.2d 442, 444 (Ky.1949) (alleged breach of provisions of coal lease was waived by lessor's continued acceptance of royalties under lease); *see also Daily v. Kelly*, 304 Ky. 229, 200 S.W.2d 114, 116 (Ky.1946) (quoting *Rich*, 99 S.W. at 955); *Cities Serv. Oil Co. v. Taylor*, 242 Ky. 157, 45 S.W.2d 1039, 1041 (Ky.1932) (citing *Rich*, 124 Ky. 669, 99 S.W. 953); *Biehl v. Wiedemann*, 189 Ky. 362, 224 S.W. 1057, 1058 (Ky.1920) (if rent accruing after forfeiture is knowingly accepted by lessor, it will constitute a waiver of right to seek forfeiture of a lease).

In this case, it is not disputed that representatives of the Jones Trusts had knowledge of this earth removal when it occurred in November 1997. Despite this knowledge, the Jones Trusts continued to

accept Martin Marietta's lease payments through July 1998. Under Kentucky law, by accepting these payments with knowledge of the alleged breach, the Jones Trusts waived their right to terminate the Lease for this breach.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's entry of summary judgment in favor of Martin Marietta on the reasoning of the district court.