NICKELL, JUDGE:
The City of Richmond, Richmond Planning and Zoning Commission, and David Rush, Chairman of the Richmond Planning and Zoning Commission (collectively referred to as "the City"), challenge an order entered by the Madison Circuit Court granting partial summary judgment to Spangler Apartments, LLC ("Spangler") and holding the real property at issue is not subject to a land use restriction on multifamily development.[1] Following careful review, we reverse and remand for further proceedings consistent with this Opinion.
On June 9, 2006, Tom Harper, owner of a 97-acre tract of real property in Richmond, Kentucky applied to the Richmond Planning and Zoning Commission ("Planning Commission") for a zoning map amendment to change the property from agricultural to R-4. Additionally, Harper's application stated, "[a]ll of the property will be used for a single-family development in keeping with the goal of the multi-family housing moratorium currently in effect." After a public hearing (during which the restriction was again mentioned), the Planning Commission issued its Report with Findings of Fact and Recommendation approving Harper's application. In its *559 findings of fact, the Planning Commission stated:
[T]he applicant's offer to restrict the property from multifamily use is in accord with the multifamily moratorium currently in effect in the City of Richmond and the goals of equalization of multifamily and single family housing promoted by the moratorium and stated as objectives in the comprehensive plan.
Similarly, it recommended to the Richmond City Commission ("City Commission") the property "be zoned R4, with a restriction, as proposed by the applicant, that no part of the property shall be used for multifamily purposes."
The Planning Commission's recommendation was presented to the City Commission, and after consideration, the City Commission issued Ordinance 06-30. Ordinance 06-30 does not explicitly approve any part of the Planning Commission's recommendation. Following a description of the property in Section I, Section II of the Ordinance instructs the Director of the Planning Department to make "appropriate changes" to the zoning map, without specifying what those changes should be. The preamble to the Ordinance explains Harper applied to the Planning Commission to change his property from an agricultural zoning classification to an R-4 classification, the Planning Commission held a public hearing, and the Planning Commission recommended approving the zone change request.
Later that year, the property was sold to 876 Development, LLC, which became Meridian Partners, LLC. In 2015, Meridian Partners, LLC, entered into a contract with Spangler to sell a portion of the property. The contract was expressly contingent on the Planning Commission's approval of the plan for a multifamily housing development. Spangler sought approval of its development plan and minor plat with the Planning Commission. The Planning Commission held a public hearing on August 27, 2015, at which some residents voiced their belief the property was precluded from multifamily development. Regardless, the Planning Commission approved the development plan and minor plat, but David Rush, the Chairman of the Planning Commission ("Chairman"), refused to execute either. After approval, Rush learned of the potential land use restriction on this property, as detailed above. The City Commission then passed Ordinance 15-20 on October 27, 2015, explicitly adopting the Planning Commission's recommendation from 2006 and zoning the property R-4 with a restriction on multifamily development. The Ordinance states its intent to "correct the clerical errors and omissions of Ordinance No. 06-30[.]" Additionally, the City Commission filed a certificate of land use restriction in accordance with the ordinance with the County Court Clerk's office.
Spangler then filed this action with the Madison Circuit Court, requesting the court to declare the property zoned R-4 without any land use restriction and order the Chairman to execute the development plan and minor plat. Spangler moved for partial summary judgment, arguing (1) the subject property was rezoned R-4 without restriction through Ordinance 06-30; (2) the Planning Commission's approval of Spangler's development plan was final and the Chairman must execute the minor plat; and, (3) the City should be estopped from arguing the property was rezoned with a restriction on multifamily development. In response, the City argued the subject property was always subject to the land use restriction after the rezoning in 2006, and thus, the Planning Commission and Chairman cannot execute a minor plat inconsistent with the zoning regulations. The City also argued equitable estoppel was *560 inapplicable in this situation. Spangler filed a written reply, and the trial court held a brief hearing on the motion, at which it orally granted Spangler partial summary judgment. The trial court's written order entered May 2, 2016, found "for the reasons stated in the Motion there are no issues of material fact in dispute and that, as a matter of law, the Motion is granted." This appeal followed.
The standard of review for a grant of summary judgment is "whether the trial court correctly found there were no genuine issues of any material fact and the moving party was entitled to judgment as a matter of law." Scifres v. Kraft , 916 S.W.2d 779, 781 (Ky. App. 1996) ; CR 56.03. Summary judgment "should only be used 'to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant.' " Steelvest, Inc. v. Scansteel Serv. Ctr., Inc. , 807 S.W.2d 476, 483 (Ky. 1991) (quoting Paintsville Hospital Co. v. Rose , 683 S.W.2d 255, 256 (Ky. 1985) ). Further, "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." Id. at 480. Because summary judgment only involves legal questions and factual findings are not at issue, "an appellate court need not defer to the trial court's decision and will review the issue de novo. " Lewis v. B & R Corp. , 56 S.W.3d 432, 436 (Ky. App. 2001).
The questions involved here are: (1) whether the property was subject to a restriction on multifamily development through Ordinance 06-30, operation of statutory law, or Ordinance 15-20; (2) whether the Chairman is required to execute the minor plat after the Planning Commission approves the development plan; and, (3) if the property is subject to the restriction, whether equitable estoppel or honest error is applicable under these circumstances.
The trial court held the property is not subject to a restriction on multifamily development. Spangler's argument in support of the trial court's decision requires a reading of Ordinance 06-30 in isolation, whereas the City's opposition arguments require Ordinance 06-30 to be read in conjunction with the statutory framework for zoning law and Ordinance 15-20. Because "strict compliance with the law on planning and zoning is required," we cannot ignore the statutory framework governing the actions taken by zoning commissions and legislative bodies. Evangelical Lutheran Good Samaritan Soc., Inc. v. Albert Oil Co., Inc. , 969 S.W.2d 691, 694 (Ky. 1998).
KRS 2 100.211 provides the procedural requirements for amending the zoning map. Under KRS 100.211(2), a planning commission reviewing a proposed amendment must hold a public hearing and make findings of fact and a recommendation to the legislative body (or fiscal court). Here, the Planning Commission complied with those procedures and recommended the legislative body approve the R-4 zoning change with a restriction on multifamily development.
The recommendation is then presented to the legislative body, which here is the Richmond City Commission. As for the legislative body's options, the statute provides, in pertinent part:
Unless a majority of the entire legislative body or fiscal court votes to override the planning commission's recommendation, such recommendation shall become final and effective and if a recommendation of approval was made by *561 the planning commission, the ordinance of the fiscal court or legislative body adopting the zoning map amendment shall be deemed to have passed by operation of law.
KRS 100.211(2)(i).
The fiscal court or legislative body shall take final action upon a proposed zoning map amendment within ninety (90) days of the date upon which the planning commission takes its final action upon such proposal.
KRS 100.211(8).
The combined effect of these statutory provisions is to override, or reject, the recommendation of the planning commission, a majority of the legislative body must vote to do so. Evangelical Lutheran , 969 S.W.2d at 694. If the legislative body does not, the planning commission's recommendation becomes effective as a matter of law after 90 days. Id.
In addition to the statutory framework requiring specific action to reject a recommendation, Kentucky courts have held KRS 100.213 requires the planning commission or legislative body to make findings of fact to support its decision regarding a zoning map amendment, and thus, "[i]f the legislative body does not follow the recommendations of the planning and zoning commission, the legislative body must make its own findings of adjudicative facts." McKinstry v. Wells , 548 S.W.2d 169, 174 (Ky. App. 1977). See also Montfort v. Archer , 477 S.W.2d 144 (Ky. App. 1971) ; City of Louisville v. McDonald , 470 S.W.2d 173 (Ky. 1971). Here, the City issued Ordinance 06-30 without any additional adjudicative facts explaining why the restriction was not approved, contrary to the recommendation of the Planning Commission. Under this line of cases, the remedy for legislative action without findings of facts is to direct the matter back to the legislative body for action in accordance with the law. McKinstry , 548 S.W.2d at 175. Such a directive is unnecessary here because the City Commission has already cured these defects by issuing Ordinance 15-20, explicitly stating the Planning Commission's recommendation is approved in toto.
For the above reasons, Ordinance 06-30 was ineffective because it neither adopted the recommendation of the Planning Commission, nor did the City Commission override the Planning Commission's recommendation or make separate findings of fact rejecting the land use restriction. The Planning Commission's recommendation, then, became effective as a matter of law after the passage of 90 days, and the subject property was rezoned R-4 with a restriction on multifamily development. The City suggests three ways existence of the restriction may be found as a matter of law-through Ordinance 06-30, through operation of statutory law, or through nunc pro tunc Ordinance 15-20. To hold Spangler should not be granted summary judgment on this issue, we only need to hold under some application of law the restriction accompanied the property. We conclude the restriction was effective through operation of law, rather than either ordinance. The alternatives are insufficient. On its face, Ordinance 06-30 does not explicitly provide for a restriction on the property; the restriction would have to be implicitly attributed to the ordinance language. Similarly, Ordinance 15-20 cannot, by itself, make the restriction effective because a nunc pro tunc order or ordinance "may be used to make the record speak the truth, but not to make it speak what it did not speak but ought to have spoken." Benton v. King , 199 Ky. 307, 250 S.W. 1002, 1003 (1923). Without minutes from the City Commission's meeting in 2006, there is no record evidence on which to base the corrective ordinance. See *562 Hoskins v. Pitman , 229 Ky. 260, 16 S.W.2d 1052, 1052 (1929). Thus, we conclude, as a matter of law, the trial court erroneously found the property was not subject to the land use restriction.
Spangler's other arguments in support of the trial court's order are also unavailing. Spangler contends a certificate of restriction should have been filed if a restriction was approved for the subject property. Again, Kentucky law provides for a default when a certificate is not filed. Under KRS 100.3681(4), if a certificate of land use restriction is improperly filed, not timely filed, or not filed at all, the restriction is still valid and enforceable. The City Commission remedied this error on October 29, 2015, when a Certificate of Land Use Restriction covering the subject property was filed with the Madison County Court Clerk. Thus, this contention fails as a matter of law.
Spangler's second argument is the Chairman must execute the minor plat because the Planning Commission has already approved the development plan. Although the Planning Commission approves subdivision plats "as a ministerial function to insure compliance with the subdivision regulations," Nash v. Campbell County Fiscal Court , 345 S.W.3d 811, 815 (Ky. 2011), a plat cannot be approved and executed if it conflicts with current zoning regulations. Sebastian-Voor Properties, LLC v. Lexington-Fayette Urban County Government , 265 S.W.3d 190, 194 (Ky. 2008) (finding planning and zoning commission correct in rejecting subdivision plat because it conflicted with applicable zoning regulations). Thus, the Chairman did not err in refusing to execute the plat because he was aware of the possibility of voidance if the property was subject to a restriction on multifamily development, and the trial court erroneously granted summary judgment on this issue.
Finally, Spangler argued the City should be estopped from denying the property is zoned R-4 without restriction. In Sebastian-Voor Properties , 265 S.W.3d at 194-95, the Kentucky Supreme Court laid out the following elements of equitable estoppel:
The essential elements of equitable estoppel are[:] (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other person; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.
Equitable estoppel can be invoked against a governmental entity, such as the City Commission and the Planning Commission, but "a court must find that exceptional and extraordinary equities are involved to invoke that doctrine." Id. at 194.
"Estoppel is a question of fact to be determined by the circumstances of each case." Id. Spangler presented many facts to support the application of equitable estoppel, such as its due diligence in speaking to several individuals about Ordinance 06-30 and its expenditures in pursuing *563 this development. However, the City presented facts in opposition, arguing Spangler had knowledge of a potential restriction in the ordinance and the City made no false representation. Summary judgment requires a lack of genuine issues of material fact. The competing arguments of the parties reveal a dispute of fact, rendering entry of partial summary judgment improper on these issues. The fact-finder must make this factual determination in the trial court. Spalding v. Marion County Bd. of Educ. , 452 S.W.3d 611, 617 (Ky. App. 2014). Similarly, application of the "honest error" doctrine requires determination of existence of a factual dispute. City of Berea v. Wren , 818 S.W.2d 274, 277 (Ky. App. 1991). Thus, we remand both claims to the trial court for factual determination of whether equitable estoppel or "honest error" doctrine apply in this case.
For the foregoing reasons, the Madison County Circuit Court order is reversed and remanded for further proceedings consistent with this Opinion.
ALL CONCUR.

An order entered May 2, 2016, granting partial summary judgment read, in relevant part: "That as to the issues herein described, there being no just cause for delay, this Judgment is final." See Kentucky Rules of Civil Procedure (CR) 54.02.