RENDERED:  DECEMBER 10, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1469-MR

THE JAMES C. HUDSON AND
NORMA D. HUDSON REVOCABLE
TRUST                                                                 APPELLANT


APPEAL FROM WARREN CIRCUIT COURT
v.            HONORABLE JOHN R. GRISE, JUDGE
ACTION NO. 20-CI-00467


CRAIG RUNNER AND MELISSA
HAYES D/B/A MELISSA'S
COUNTRY CAFE                                                         APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, LAMBERT, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  This matter is on review to determine whether the Warren

Circuit Court properly (1) granted a lessee's declaratory judgment and permanent

injunction against a landlord, and (2) enjoined the lessor from treating the lease as null and void. For the reasons set forth, we AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

The appellant/lessor, James C. Hudson and Norma D. Hudson Revocable Trust (the Trust), is the owner of real estate located at 7493 Russellville, Bowling Green, Kentucky. On or about February 23, 2015, the Trust signed a lease agreement with appellee/lessee, Craig Runner (Runner). The lease contains a provision allowing the initial five-year term, starting April 1, 2015, to be extended for an additional five-year term. In pertinent part, the lease includes an insurance requirement and provisions defining what constitutes default, notice, and subletting.

Many facts and dates are contested by the parties. Runner states in his affidavit that on or before February 1, 2017, he started subleasing the property to Melissa Hayes (Hayes).[1] The property includes a restaurant, which thereafter changed names from "Country Café" to "Melissa's Country Café."

According to Runner's affidavit, "[w]hen I collected September 2019 rent from Melissa Hayes, she informed me she was no longer going to pay rent to me and would rent directly from Mrs. Hudson." Despite this, on or about

---

[1] Melissa Hayes d/b/a Melissa's Country Café was named as an appellee, but she did not file a brief in this matter.

September 26, 2019, Runner sent written notice to Norma Hudson (Norma), the only remaining trustee,[2] via certified mail, of his intention to extend the lease for an additional five years pursuant to the lease.

On or about October 28, 2019, Runner's legal counsel and the Trust's legal counsel had a conversation. During that conversation, the Trust's attorney informed Runner's attorney that Runner had properly exercised his right to extend the lease, but that the property was not properly insured. Shortly after this letter, Runner states that he provided the Trust a copy of the insurance declaration belonging to subtenant Hayes.

On October 29, 2019, Norma's counsel sent her a letter, stating, "I have discussed this matter [the lease] with Attorney Mark Allcott [sic] who represents Craig Runner with regard to the above-mentioned Lease. Attorney Alcott indicated he would make sure his client immediately secures the insurance referred [to] in paragraph IX of the Lease. I have requested a copy of the policy as proof and will provide you with same upon receipt." There is no indication the Trust sought to terminate the lease at this time.

According to Runner, on or about January 3, 2020, an attorney for the Trust requested that Norma be named as an additional insured on the insurance

---

[2] James C. Hudson is now deceased.

policy on the property. Thereafter, Runner stated that he requested Hayes add Norma to her insurance policy on the property.

On March 11, 2020, counsel for the Trust hand-delivered a letter to Runner's counsel. The March 11 letter states, in relevant part, "[p]lease let me make it clear that Mr. Runner has violated the terms and conditions of the Lease in question, and my clients do not agree to his extension. Mr. Runner has not had the property appropriately insured during the lease period. Further, Mr. Runner sublet the property without notice and permission, and for those reasons we declare the lease null and void and expect him to vacate the premises on April 1, 2020."

Even with the letter, Runner stated that on March 23, 2020, he sent the Trust, via certified mail, a check for $3000 as rent for the six-month period beginning on April 1, 2020. The Trust accepted this rent payment.

On March 27, Runner filed suit in Warren Circuit Court seeking injunctions, restraining orders, and a declaration of rights as it related to his alleged leasehold interest in the property. After numerous motions, answers, counterclaims, and oral arguments, the circuit court issued an order, without a bench trial, resolving the issues and dismissing the case.

The September 4, 2020 order held: (1) Runner properly extended his lease with the Trust; (2) Runner breached the lease by not maintaining proper insurance and by subleasing without the Trust's written permission; (3) Runner

was not properly notified of either breach and is not estopped from making such argument because the Trust has not been prejudiced by Runner's position; (4) Runner has cured the insufficient insurance matter; and (5) the Trust waived its argument regarding Runner's improper sublease by accepting rent from Runner while knowing that Hayes was a sublessor. This order granted Runner's petition for a declaratory judgment and permanent injunction against the Trust; it also enjoined the Trust from treating the lease as null and void.

Afterward, the Trust moved the circuit court to alter, amend, or vacate the September 4 order, claiming: (1) Runner had actual notice of his breach and failed to cure within the requisite time period; (2) the Trust proved it was injured, prejudiced, or acted to its own detriment; and (3) the Trust did not waive compliance. The court denied the motion, and this appeal followed.

On appeal, the Trust reasserts the same arguments it raised in the motion to alter, amend, or vacate the September 4 order. Those issues were well addressed in the circuit court's October 12 order denying the motion; and, we reiterate below.

**STANDARD OF REVIEW**

In a *declaratory action*, findings of fact are reviewed under a clearly erroneous standard, and conclusions of law are reviewed *de novo*. *Big Sandy Co., L.P. v. EQT Gathering, LLC*, 545 S.W.3d 842, 844 (Ky. 2018) (citing *Baze v. Rees*,

-5-

217 S.W.3d 207, 210 (Ky. 2006)).  *See also* Kentucky Rule of Civil Procedure (CR) 52.01.  Additionally, when a court grants a *permanent injunction* the order shall not be set aside unless clearly erroneous.  CR 52.01.  Factual findings are clearly erroneous if unsupported by substantial evidence.  *Bishop v. Brock*, 610 S.W.3d 347, 350 (Ky. App. 2020) (citation omitted).   Substantial evidence is defined as that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person.  *Id.*  (internal quotation marks and citations omitted).

### NOTICE

The Trust argues the October 2019 conversation between the parties' legal representatives gave Runner *actual* notice of his insurance failure.  Additionally, the March 11 letter put Runner on notice of his breach in regard to both the insurance failure and the unapproved sublease.  The Trust argues, at the latest, the 30-day window to cure began with the March 11 letter.  The cure window elapsed, and the contract voided, because Runner's insurance was not effective until April 22.

Runner argues that because the October 2019 notice was not in writing, as required by the lease, it therefore did not initiate the lease's 30-day window to cure.  Runner also argues that although written notice was given to him in the March 11 letter, the letter was not sent via certified mail, as required by the

lease.  Additionally, Runner argued he did take prompt steps to cure upon receiving written notice of the insurance requirement. [3]

The circuit court held that Runner was not properly notified of either breach.  We agree with the circuit court; and, without published, fact-analogous precedent to guide us, we turn to the unambiguous lease itself.  An unambiguous written contract must be strictly enforced according to the plain meaning of its express terms and without resort to extrinsic evidence.  *Allen v. Lawyers Mut. Ins. Co. of Kentucky*, 216 S.W.3d 657 (Ky. App. 2007) and *Smithfield Farms, LLC v. Riverside Developers, LLC*, 566 S.W.3d 566, 570 (Ky. App. 2018).

Section XIV of the lease, "Default," requires that "[a]ny notice required under the terms and conditions of this Lease shall be given by certified mail, return receipt requested, to the addresses of the Landlord and the Tenant[.]" Runner was not notified via certified mail of any alleged breach.  We need not review the circuit court's determination that the subtenant and insurance failure were both breaches, because whether they were or not, Runner was not properly notified of the breach.

---

[3] Runner applied for the requisite insurance on April 1, 2020; the insurance was finalized April 10 and effective as of April 22.

## ESTOPPEL

Estoppel is a question of fact to be determined by the circumstances of each case. *City of Richmond v. Spangler Apartments, LLC*, 547 S.W.3d 556, 562 (Ky. App. 2018) (internal quotation marks and citations omitted). Equitable estoppel, in pertinent part,[4] requires action or inaction of such a character as to change the position or status of the party claiming the estoppel, *to his injury, detriment, or prejudice. Id.*

The Trust argues[5] the March 11 letter declared the lease null and void, and from that point forward, Runner was in wrongful possession of the property. This wrongful possession allegedly interfered with the Trust's use and enjoyment of the land; and, it is argued such an unreasonable interference with the property owner's possessory use of his/her property is sufficient evidence of an actual injury. *Smith v. Carbide and Chemicals Corp.*, 226 S.W.3d 52, 57 (Ky. 2007). *Smith* holds that contamination alone, even if invisible to the naked eye and

---

[4] "[A]s related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice." *Id.*

[5] The parties and the circuit court discussed *Spalding v. Myers*, No. 2009-CA-001070-MR, 2011 WL 6743292 (Ky. App. Dec. 22, 2011), but because that is an unreported case, we continue our analysis without it.

without verifiable health risks, is sufficient evidence of injury (or damage to property) to award actual damages. *Id.*

But, in *Smith*, the contamination was held to be damage that encroached on the owner's use and enjoyment of the land. Herein, the use and enjoyment of the land was not affected by Runner's continued presence. The Trust does not argue Runner damaged the property, prohibited their use of the land, or diminished the value in any way. The Trust has not proved *any* interference with the Trust's use of the property. Without any interference, any reliance to their detriment, or any injury, Runner is not estopped from arguing the Trust did not properly notify him of his breach. We agree with the trial court that Runner is not estopped from arguing lack of required notice because the Trust was not prejudiced by Runner's position.

## COMPLIANCE

Section XVI of the lease requires "prior written consent of the Landlord" before subleasing; there is no dispute that Runner did not have written permission from the Trust to sublease to Hayes.

The Trust argues it did not waive compliance with the lease by accepting rental payments with knowledge that Hayes was subleasing the property from Runner. The Trust argues Runner did not strictly comply with the lease; and, accepting rent did not waive that lease requirement.

Runner argues that the Trust waived compliance with the lease by accepting rent after having actual notice of the sublease. Although the facts are contested by the parties, Runner argues the Trust had knowledge of the subtenant (1) by receiving a copy of the sublessor's insurance policy, (2) from a conversation with Runner, and/or (3) first-hand knowledge by eating at the subleased restaurant, "*Melissa's* Country Cafe." Additionally, Runner cites to *Venters v. Reynolds*, 354 S.W.2d 521 (Ky. 1961), a case with very similar facts to the present case.

In *Venters*, the lessee signed a lease for five years with an option to extend for 15 years. The lessee subleased a portion of the leased property to a third party; the third party used the land to open a restaurant. The lessor lived within a few hundred feet of the restaurant and had knowledge of the third party's operating the restaurant. *Venters* held that the lessor waived the right of forfeiture by accepting rent from the sublessee with knowledge that a sublease had occurred in violation of the lease. *Id*. at 524.

The circuit court ruled consistent with the *Venters* precedent. The court enumerated various ways the trustees gained knowledge of the sublease (proximity, restaurant name change, conversations, emails); and therefore, the Trust waived Runner's breach (of the written permission to sublease requirement) of the lease. We find no error with the circuit court's decision.

-10-

**CONCLUSION**

We find the circuit court's order was supported by substantial evidence. For the reasons expressed, the opinions and orders entered by the Warren Circuit Court – keeping the lease contract intact and enjoining the Trust from treating the lease contract as null and void – are AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

David F. Broderick
Brandon T. Murley
Bowling Green, Kentucky

BRIEF FOR APPELLEE:

Mark D. Alcott
Justin L. Duncan
Bowling Green, Kentucky