ACREE, JUDGE:
The issue before us is whether the Gallatin Circuit Court properly entered summary judgment against Appellant Smithfield Farms, LLC, finding its contract with Appellee Riverside Developers, LLC was unambiguous and thus not subject to explanation by extrinsic evidence, and that Riverside properly terminated the contract because Smithfield did not qualify as a holdover tenant under KRS[1] 383.160(1). We find no error, and affirm.
FACTS AND PROCEDURE
In January 2011, Smithfield entered into a written contract with Riverside to lease land to grow soybeans. The term was for a "one[-]year project." The parties agreed to *568 evenly split the profits and expenses. The agreement, dated January 20, 2011, stated in full:
I wish to thank you for your time and great discussions on your agreement to raise soybeans on our Riverside Developers LLC land on both sides of US 42 just east of Warsaw! Mr. Stan Freeman, our GM, will handle all issues on this one[-]year project. This will be a 50-50 agreement with your usage of your (very nice equipment) equipment [sic]. Your trucking of finished beans will be charged additional!! Both Stan & I look forward to your experience on this project & hopefully longer[-]term relationship!! Please return to me, one of my contracts!!
Both parties signed the agreement.
Even though the parties did not execute a new written contract, they continued to operate in the same manner in 2012, 2013, and 2014 as they had done under the 2011 lease-Smithfield grew soybeans on Riverside's land, and the parties split the profits equally. In February 2015, representatives from Smithfield and Riverside met to discuss a "price per acre" lease. The parties failed to reach an agreement. Riverside notified Smithfield on March 26, 2015, that it had accepted another offer to lease the property.
Smithfield then filed this breach of contract action, claiming Riverside wrongfully terminated the lease, thereby depriving Smithfield of reasonably anticipated profits. Citing common industry standards, customs, and practices, Smithfield asserted that the parties' 2014 lease expired on November 1, 2014, and that from November 1, 2014 to March 26, 2015, a period in excess of ninety days, it was a holdover tenant under KRS 383.160(1). Consequently, Smithfield claimed, it was entitled to remain as a tenant and to use the land for another year (until November 1, 2015).
Riverside moved for summary judgment, claiming it was undisputed that in February 2015 the parties entered into discussions regarding a new lease agreement and Riverside informed Smithfield that it was going to lease the land to another tenant on March 26, 2015, both within ninety days of the expiration of the 2014 holdover lease on January 20, 2015. Riverside claimed it was entitled to judgment as a matter of law in light of these undisputed facts.
The circuit court granted Riverside's motion by order entered September 16, 2016. It found the contract clear and unambiguous in that it was for a one-year term starting January 20, 2011, and therefore expiring January 20, 2012. However, because the parties treated the contract as continuing after its expiration, by operation of law the parties entered into subsequent one-year term contracts in 2012, 2013, and 2014, with the 2014 lease expiring on January 20, 2015. It then found that Smithfield did not occupy the land for a period of ninety days after the expiration of the 2014 lease, and therefore it did not qualify as a holdover tenant under KRS 383.160(1). It awarded Riverside summary judgment. Smithfield appealed.
STANDARD OF REVIEW
Our review of the circuit court's decision to grant summary judgment is de novo. Harstad v. Whiteman , 338 S.W.3d 804, 809 (Ky. App. 2011). In doing so, we must ascertain "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." Scifres v. Kraft , 916 S.W.2d 779, 781 (Ky. App. 1996) ; CR[2] 56.03. "The moving *569 party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present" evidence establishing a triable issue of material fact. Lewis v. B & R Corp. , 56 S.W.3d 432, 436 (Ky. App. 2001). That is, "[t]he party opposing a properly presented summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing the existence of a genuine issue of material fact for trial." City of Florence, Kentucky v. Chipman , 38 S.W.3d 387, 390 (Ky. 2001).
ANALYSIS
Smithfield argues that genuine issues of material fact exist precluding summary judgment. Specifically, it claims there are genuine disputes as to: when the 2014 contract terminated; whether Smithfield held over for the requisite ninety days; and whether KRS 383.160(1) extended the lease through 2015. We are not persuaded.
We start with KRS 383.160(1), commonly referred to as Kentucky's holdover statute. The statute outlines the ramifications when a tenant overstays the expiration of his or her lease. The statute provides:
If, by contract, a term or tenancy for a year or more is to expire on a certain day, the tenant shall abandon the premises on that day, unless by express contract he secures the right to remain longer. If without such contract the tenant shall hold over, he shall not thereby acquire any right to hold or remain on the premises for ninety (90) days after said day, and possession may be recovered without demand or notice if proceedings are instituted within that time. But, if proceedings are not instituted within ninety (90) days after the day of expiration, *570 then none shall be allowed until the expiration of one (1) year from the day the term or tenancy expired. At the end of that year the tenant shall abandon the premises without demand or notice, or stand in the same relation to his landlord that he did at the expiration of the term or tenancy aforesaid; and so from year to year, until he abandons the premises, is turned out of possession, or makes a new contract.
KRS 383.160(1). "In essence, [KRS] 383.160(1) creates a default relationship between a landlord and a holdover tenant, giving the tenant the right to remain on the land for one year past the expiration of the lease, unless the landlord initiates ejection proceedings within 90 days after that date." Alabama Farmers Co-op., Inc. v. Jordan , 440 Fed.Appx. 463, 466 (6th Cir. 2011). Stated another way, by operation of KRS 383.160(1), a tenancy for a term of one year is created by operation of law if the tenant holds over for more than ninety days after the expiration of the lease and the landlord does not take certain actions within that time. The tenancy can then endure "from year to year" until the tenant "abandons the premises, is turned out of possession, or makes a new contract" with the landlord. KRS 383.160(1).
We agree, generally, that Smithfield's continued occupancy of Riverside's land is governed by KRS 383.160(1). Smithfield did not abandon the land at the expiration of the original one-year lease, but instead continued to grow crops on the property in 2012, 2013, and 2014. It became a holdover tenant, subject to a one-year lease in each of those years.
The pivotal question, then, is when did the original lease expire? For that determines when all the subsequent holdover leases began and ended, including the 2014 lease. See KRS 383.160(1) ("But, if proceedings are not instituted within ninety (90) days after the day of expiration, then none shall be allowed until the expiration of one (1) year from the day the term or tenancy expired ... and so from year to year, until he abandons the premises, is turned out of possession, or makes a new contract."). If there is an ambiguity in the contract, this is a material fact about which there is a genuine issue precluding summary judgment. See Cook United, Inc. v. Waits , 512 S.W.2d 493, 495 (Ky. 1974) ; CR 56.03. Because our resolution of the ambiguity question will dictate how our interpretive analysis will proceed, we must first determine whether the contract is ambiguous as to its term.
Riverside asserts that the contract is unambiguous, and that by its plain language it was for a one-year term, starting January 20, 2011 and terminating January 20, 2012. Consequently, the 2012, 2013, and 2014 holdover lease agreements were for the same one-year terms, beginning and ending on January 20th of the appropriate year.
Smithfield, on the other hand, focuses exclusively on the 2014 holdover lease. It claims the contract terminated as of November 1, 2014, being the industry standard end-of-growing season date and the date when the executory contract was fully performed. Smithfield's argument is this: the phrase "one[-]year project" as used in the original lease agreement is an unusual way to express the term of a lease, and its meaning is unclear and ambiguous. It is proper then to rely on parol evidence to explain the contract. The subject of the contract in this case was the project to produce and sell soybeans, and split the profits. And in the agricultural industry, it is common practice and custom for such a contract to terminate upon full performance of its purpose-that is, the date the crop is fully harvested, sold, and the proceeds divided. That occurred in this case, Smithfield claims, on November 1, 2014. Accordingly, November 1, 2014, is the day the project and contract terminated. We disagree.
Ordinary contract principles require that, absent an ambiguity, a written instrument be enforced strictly according to its terms and the contract's meaning discerned from the four corners of the agreement without resort to extrinsic evidence. Frear v. P.T.A. Industries, Inc. , 103 S.W.3d 99, 106 (Ky. 2003) ; Smith v. Crimson Ridge Development, LLC , 410 S.W.3d 619, 621 (Ky. App. 2013) ("A contract is interpreted by looking solely to the four corners of the agreement."). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent, yet reasonable, interpretations." Cantrell Supply, Inc. v. Liberty Mut. Ins. Co. , 94 S.W.3d 381, 385 (Ky. App. 2002) ; Frear , 103 S.W.3d at 106, n.12 ("[A]n ambiguous contract is one capable of more than one different, reasonable interpretation."). However, "an otherwise unambiguous contract does not become ambiguous when a party asserts ... that the terms of the agreement fail to state what it intended." Frear , 103 S.W.3d at 107. Stated differently, "[t]he fact that one party may have intended different results ... is insufficient to construe a contract at variance with its plain and unambiguous terms." Cantrell Supply Inc. , 94 S.W.3d at 385.
Where the contract's language is clear and unambiguous, the agreement is to be given effect according to its terms, and "[the] court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." Frear , 103 S.W.3d at 106. In the absence of ambiguity, the parties' intention must be gathered from the four corners of the instrument at issue, and extrinsic evidence may not be admitted to vary the instrument's terms. Hoheimer v. Hoheimer , 30 S.W.3d 176, 178 (Ky. 2000).
*571 In this case, the language of the contract is plain and unambiguous. It was for a one-year project. The ordinary meaning of one year is one calendar year or 365 days. Use of the phrase "one-year project" was a choice of the parties and is in no way ambiguous. If the contract began on January 20, 2011, it terminated one year later, on January 20, 2012. All subsequent holdover leases also began and ended on January 20th of the appropriate year, concluding with the 2014 lease, which was in effect from January 20, 2014, to January 20, 2015.
Smithfield claims the parties intended the phrase "one year" to mean "one crop year." It then relies on industry standards and customs for its position that a crop year ends by November 1st. Smithfield attempts to use extrinsic evidence to create an ambiguity, and in turn, a genuine issue of material fact. But that is putting the proverbial cart before the horse. We are confined to the four corners of the contract in determining whether an ambiguity exists. Examining the contract in this case reveals no ambiguity-the contract was for one year. The language is plain, clear, and concise. The lease makes no mention of a crop year, industry standards, or November 1 as the contract's end date. Finding no ambiguity, there is no need to turn to extrinsic evidence to interpret the contract.
Again, an unambiguous written contract must be strictly enforced according to the plain meaning of its express terms. Allen v. Lawyers Mut. Ins. Co. of Kentucky , 216 S.W.3d 657, 660 (Ky. App. 2007). We are powerless to interpret a contract contrary to such a plain meaning as is discernible from this agreement. Abney v. Nationwide Mut. Ins. Co. , 215 S.W.3d 699, 703 (Ky. 2006).
Turning back to KRS 383.160(1), this Court, like the circuit court, finds that within ninety days of January 20, 2015-the date the 2014 lease terminated-Riverside and Smithfield engaged in fruitless contract negotiations, after which Riverside turned Smithfield out of possession by informing it on March 26, 2015, that the lands would be leased to another. All of this occurred within ninety days of the expiration of the 2014 lease. See KRS 383.160(1). Smithfield had no right or hold to remain on the land in 2015. Id.
A straightforward application of ordinary contract principles yields an unambiguous contract with a one-year duration that was extended by operation of law under KRS 383.160(1) from year to year until terminated by Riverside within ninety days of the expiration of the 2014 lease. There are no material facts that warrant a trial, and the circuit court correctly found that Riverside was entitled to judgment as a matter of law.
CONCLUSION
We affirm the Gallatin Circuit Court's September 16, 2016 order awarding summary judgment in favor of Riverside.
ALL CONCUR.

Kentucky Revised Statutes.

Kentucky Rules of Civil Procedure.