RENDERED:  JANUARY 14, 2022; 10:00 A.M.
TO BE PUBLISHED

MODIFIED:  JANUARY 21, 2022; 10:00 A.M.

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0086-MR

THE WELLS GROUP, LLC                                        APPELLANT

v.                     APPEAL FROM FAYETTE CIRCUIT COURT
                       HONORABLE THOMAS L. TRAVIS, JUDGE
                       ACTION NO. 18-CI-02587

LONNA BISHOP                                                 APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; DIXON AND JONES, JUDGES.

CLAYTON, CHIEF JUDGE:  The Wells Group ("Wells") appeals from the

Fayette Circuit Court's order denying Wells' motion for summary judgment and

the Fayette Circuit Court's order after a bench trial entering judgment in favor of

Lonna Bishop ("Bishop") concluding that Bishop was not personally liable on a

debt owed to Wells under a credit application and dismissing Wells' complaint with prejudice.  We reverse and remand for entry of judgment in favor of Wells for the reasons stated below.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 12, 2015, Bishop, president of LMR Construction, LLC ("LMR"), signed a credit application from Wells to provide LMR with credit to purchase construction materials (the "Credit Application").  The one-page Credit Application contained four separate sections with four capitalized and bolded headings stating:  "**ACCOUNT INFORMATION**," "**BANK/TRADE REFERENCES**," "**AGREEMENT**," and "**SIGNATURE**."  The font was a uniform size throughout the entire document.

Bishop completed the first two sections of the Credit Application with LMR's applicable information.  Moreover, as previously indicated, directly above the "**SIGNATURE**" section was a paragraph containing several sentences under the heading "**AGREEMENT**."  The middle portion of the "**AGREEMENT**" paragraph contained the following language:

> For and in consideration of any credit which may now be extended or which may hereafter be extended by The Wells Group, LLC to the above named company as purchaser, the undersigned unconditionally and absolutely does personally and individually guarantee to The Wells Group, LLC . . . payment [of] any and all indebtedness that may now be due or which may hereafter become due from time to time from purchaser[.]

This is a continuing guarantee relating to any and all indebtedness of purchaser. . . . The undersigned must be a **corporate officer, partner, and/or owner of the company**.

(Emphasis in original.) The language contained in the "**AGREEMENT**" section was not in bold print except for the requirement that the undersigned be "a corporate officer, partner, and/or owner of the company."

Lastly, the Credit Application contained the "**SIGNATURE**" section at the bottom of the page with boxes for a "Signature," a "Title," and a "Date," wherein Bishop signed her name, listed "President" as her title, and dated the Credit Agreement.

In 2017, LMR defaulted on the loan with a total balance remaining of $21,773.98. In February 2018, Wells filed suit against LMR and obtained a default judgment. On July 18, 2018, Wells also filed suit against Bishop in Fayette Circuit Court, alleging that, despite its efforts to satisfy its judgment against LMR, Wells believed that LMR was no longer operating and solvent. Thus, because Wells asserted that Bishop had agreed in the Credit Application to personally guarantee the payment on behalf of LMR, it requested payment of the outstanding balance from Bishop individually, along with interest.

Thereafter, Wells filed a motion for default judgment against Bishop due to Bishop's failure to plead or otherwise defend the case, which the circuit court granted on October 8, 2018. In January 2019, Bishop hired counsel and filed

a motion to set aside the default judgment and dismiss the complaint, arguing that she was not personally liable to Wells under the Credit Application. Bishop argued in her motion that she had been unable to read the fine print of the Credit Application and that she had not intended to sign the Credit Application in her individual capacity but rather in a representative capacity as the president of LMR. Bishop further argued that, in her experience, contracts with personal guarantee provisions had separate signature lines for the individual's signature.

The circuit court entered an order on August 1, 2019, setting aside the default judgment against Bishop, but denied Bishop's request to dismiss the complaint. Wells also filed a subsequent motion for summary judgment on October 31, 2019, which the circuit court denied on December 13, 2019.

On October 26, 2020, the circuit court held a bench trial and entered an order requesting that both parties tender proposed findings of fact and conclusions of law. Thereafter, the circuit court entered a judgment with findings of fact and conclusions of law on December 23, 2020. The circuit court ultimately concluded that Bishop was not personally liable on the Credit Application and thus granted judgment in favor of Bishop.

Specifically, the circuit court found that the sentence containing the personal guarantor language, while legible, was not conspicuous enough given its placement in the document. The circuit court further found that Bishop intended to

-4-

sign the Credit Application only in her representative capacity as the president of LMR and not in any personal or individual capacity. Thus, the circuit court concluded that, because LMR was a disclosed principal and the sole applicant on the Credit Application, with Bishop acting only as an agent of LMR, Wells and LMR were the only parties to the contract.

Alternatively, the circuit court concluded that Bishop's action of signing the Credit Application with her designation or title as "President" created an ambiguity as to whether the parties intended for her – as the agent of LMR – to be personally and individually bound as a guarantor. Because of such ambiguity, the circuit court determined that there was no "meeting of the minds" as to Bishop's individual liability, making the contract insufficient to impose individual liability on Bishop. Furthermore, per the circuit court, the Credit Application's language imposing personal liability was not conspicuous enough to alert Bishop that she could have personal liability under the Credit Application. Thus, the circuit court dismissed Wells' complaint with prejudice. This appeal followed.

We will discuss further facts as they become relevant.

## ANALYSIS

Before considering the issues on appeal, we note that, contrary to Bishop's claim that Wells violated Kentucky Rule of Civil Procedure ("CR") 76.12 by failing to contain citations to the record and statements of preservation of the

-5-

issues it raises on appeal, Wells made numerous specific citations to the record in its brief. We find that Wells adequately preserved the issues on appeal for our review.

Wells first contends that it was entitled to summary judgment prior to the commencement of the bench trial. As stated by a panel of this Court, "[t]he general rule under CR 56.03 is that a denial of a motion for summary judgment is, first, not appealable because of its interlocutory nature and, second, is not reviewable on appeal from a final judgment where the question is whether there exists a genuine issue of material fact." *Transportation Cabinet, Bureau of Highways, Com. of Ky. v. Leneave*, 751 S.W.2d 36, 37 (Ky. App. 1988) (citation omitted). The foregoing rule makes sense, as "once the trial begins, the underlying purpose of the summary judgment expires and all matters of fact and law procedurally merge into the trial phase, subject to in-trial motions for directed verdict or dismissal and post-judgment motions for new trial and/or judgment notwithstanding the verdict." *Id*. at 38.

However, an exception to this rule exists:

where: (1) the facts are not in dispute, (2) the only basis of the ruling is a matter of law, (3) there is a denial of the motion, and (4) there is an entry of a final judgment with an appeal therefrom. Then, and only then, is the motion for summary judgment properly reviewable on appeal[.]

*Id.* at 37 (citations omitted); *see also Kentucky Farm Bureau Mut. Ins. Co. v. Coyle*, 285 S.W.3d 299, 303 (Ky. App. 2008).

As previously discussed, in this case, the circuit court denied Wells' motion for summary judgment, and Wells appealed from the circuit court's entry of final judgment. Thus, sections (3) and (4) of the *Leneave* test are satisfied. Moreover, as further discussed below, we believe that the exception described in *Leneave* is applicable in this case, and therefore that the trial court's denial of summary judgment is reviewable upon appeal.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03.

Utilizing the foregoing standard, we believe that the circuit court should have awarded Wells summary judgment in this matter, as there were no material facts in dispute. The primary goal when interpreting a contract "is to ascertain the intention of the parties thereto" as "gathered from the words which the parties employ in stating their contract, and not to any unexpressed or mental intention which they may have entertained but which they did not express[.]" *Siler v. White Star Coal Co.*, 190 Ky. 7, 226 S.W. 102, 104 (1920) (citations omitted).

Indeed, in *Hensley v. Gadd*, the Kentucky Supreme Court warned "against giving a writing meaning which is not to be found in the instrument itself under the guise of interpretation based on direct evidence of intention." 560 S.W.3d 516, 522 (Ky. 2018) (citations omitted). Consequently, under Kentucky law, "[a]ny contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986). "Parties are bound by the clear meaning of the language used[.]" *Hensley*, 560 S.W.3d at 522. "The fact that one party may have intended different results . . . is insufficient to construe a contract at variance from its plain and unambiguous terms." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002) (citation omitted).

In this case, the language of the Credit Application is clear and unambiguous. The "**AGREEMENT**" section clearly states, "the undersigned **unconditionally and absolutely does personally and individually guarantee** to The Wells Group, LLC . . . payment of **any and all indebtedness**." (Emphasis added.) Thus, when Bishop signed the Credit Application, she accepted its plain terms and assumed personal responsibility for LMR's obligations.

Bishop claims the inclusion of her title next to her signature created an ambiguity as to whether she signed the Credit Application in a representative or individual capacity. As this Court explained in *Smithfield Farms, LLC v. Riverside*

*Developers, LLC*, "absent an ambiguity, a written instrument [will] be enforced strictly according to its terms and the contract's meaning discerned from the four corners of the agreement without resort to extrinsic evidence." 566 S.W.3d 566, 570 (Ky. App. 2018) (citations omitted). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc.*, 94 S.W.3d at 385 (citations omitted); *Central Bank & Trust Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981) ("[a]n ambiguous contract is one capable of more than one different, reasonable interpretation."). However, "an otherwise unambiguous contract does not become ambiguous when a party asserts . . . that the terms of the agreement fail to state what it intended." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 107 (Ky. 2003). Stated differently, "[t]he fact that one party may have intended different results . . . is insufficient to construe a contract at variance with its plain and unambiguous terms." *Cantrell Supply, Inc.*, 94 S.W.3d at 385 (citation omitted). Any ambiguity is a genuine issue of material fact, which precludes summary judgment. *Smithfield*, 566 S.W.3d at 570 (citation omitted).

In this case, Bishop's signature, as it is written, fails to demonstrate that she signed solely in the capacity of an agent. Kentucky's highest Court has held that merely adding a title after a name does not unambiguously demonstrate representative status and does not exempt the person executing the document from

personal liability. *See generally Browning v. Park Hill Realty Co.*, 263 Ky. 636, 93 S.W.2d 358 (1936); *Sandmann v. Getty*, 254 Ky. 496, 71 S.W.2d 954 (1934). Given that the Credit Application patently and boldly stated that whoever signed it would be personally liable for any debt, there was no ambiguity that Bishop agreed to be individually responsible for any debt that LMR owed Wells. Consequently, Bishop cannot avoid liability on the basis that she signed it in the capacity of a representative.

Bishop points to *Simpson v. Heath & Company*, where a panel of this Court reasoned that the signature "William C. Simpson, Pres.," created "an ambiguity on its face as to whether the parties intended for Simpson to be bound individually." 580 S.W.2d 505, 506 (Ky. App. 1979). However, *Simpson* is distinguishable from this case for two reasons. First, the language contained in the *Simpson* agreement did not explicitly mention personal or individual liability but merely stated that "[t]he undersigned guarantees prompt payment on or before the due date of all sums to become due under the foregoing agreement[.]" *Id*. The lack of an explicit reference to personal liability renders the *Simpson* agreement language significantly less clear than the Credit Application signed by Bishop. *Id*. Second, the signer in *Simpson* appended his title voluntarily rather than adding it to a pre-existing field as Bishop did with the Credit Application. *Id*. Thus, we do not find the *Simpson* case to be applicable here.

Moreover, while Kentucky law has no legal requirement that a commercial guarantee be stated in conspicuous language, an inspection of the Credit Application reveals that the guarantee language was conspicuous. The portion of the Credit Application containing the personal guarantee was identified as "**AGREEMENT**" and was set out in capitalized and bold type. Further, the personal guarantee language was in the same font and was the same size as that in the rest of the document. "[A] person who has the opportunity to read a contract, but does not do so and signs the agreement, is bound to the contract terms unless there was some fraud in the process of obtaining his signature." *Cline v. Allis-Chalmers Corp.*, 690 S.W.2d 764, 766 (Ky. App. 1985). At best, Bishop made a unilateral mistake, which is "insufficient to rescind [the guaranty] because individual expectations are not a basis to circumvent [her] guarantee." *Buridi v. Leasing Group Pool II, LLC*, 447 S.W.3d 157, 169 (Ky. App. 2014) (internal quotation marks omitted). Nor did Bishop claim that the Credit Agreement was unconscionable or an adhesion contract. *See Schnuerle v. Insight Communications Co., L.P.*, 376 S.W.3d 561, 576 (Ky. 2012).

Finally, a dispute existed between the parties over which version of the form Credit Application was the closest in legibility to the one Bishop signed. However, because Bishop was able to fill out the remaining portions of the Credit Application correctly and because those portions used a font only slightly larger

-11-

than that of the "Agreement" section, it appears that Bishop had access to the more legible version of the application.

Accordingly, because the application of settled contractual law compels the result that Wells was entitled to summary judgment following the completion of discovery, the case should not have proceeded to a bench trial. Thus, the circuit court erred by denying Wells' motion for summary judgment.

Wells has also requested that this Court review the circuit court's findings of fact and conclusions of law contained in its order entered after the bench trial. However, because of our disposition of this appeal, this request is moot.

## **CONCLUSION**

For the foregoing reasons, we reverse both the circuit court's judgment in favor of Bishop entered after the bench trial and the circuit court's order denying Wells' motion for summary judgment and remand for entry of judgment in favor of Wells.


ALL CONCUR.

BRIEFS FOR APPELLANT:

W. Scott Stinnett
Louisville, Kentucky

BRIEF FOR APPELLEE:

William M. Allen
Lexington, Kentucky