RENDERED:  NOVEMBER 1, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0983-MR

AMERICAN TOWER LLC								APPELLANT


								APPEAL FROM LIVINGSTON CIRCUIT COURT
v.								HONORABLE JAMES R. REDD, III, JUDGE
								ACTION NO. 20-CI-00059


LOWELL DALE CALENDAR AND
MARIA L. CALENDAR								APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, McNEILL, AND TAYLOR, JUDGES.

McNEILL, JUDGE:  This case involves a lease for a communications tower located in Livingston County, Kentucky.  The underlying lease (the Lease) was executed in 1996 by the original lessee, Jackson Purchase 2-Way Radio, Inc. (JP), and the Appellees, Lowell Dale Calendar and Maria L. Calendar (Lessors).  The tower was erected on the Lessors' property.  In exchange, Lessors were provided radio equipment and free radio services on an 800 MHz trunked radio system.

Lessors did not receive any traditional rent payments. JP's interest in the Lease was subsequently assigned or otherwise transferred to several successor entities. In 1999, the tower was sold to Appellant, American Tower LLC (American). The current lessee is Freedom Tower LLC (Freedom). Freedom subleased a portion of its interest under the Lease to American. Freedom and Lessors signed a Consent to Sublease, which provided lessees with additional rights, including the right to notice of any default and an opportunity to cure.

In 2011, when the fifteen-year Lease term expired, the lessee at that time did not renew pursuant to the express terms of the Lease. In 2020, Lessors filed suit in Livingston Circuit Court arguing that the failure to renew the lease created a holdover "year-to-year" tenancy. Lessors sought eviction and to foreclose any further transactions with Lessees. The parties filed cross-motions for summary judgment. The circuit court granted summary judgment in Lessors' favor and denied American's motion. The court also ordered that Lessors now own the tower. American appealed to the Court as a matter of right. For the following reasons, we affirm.

## STANDARD OF REVIEW

"Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis v. B&R*

*Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001) (citation omitted).  The Lease is a

contract governed by the basic principles of contract law:

> Where a contract is ambiguous or silent on a vital
> matter, a court may consider parol and extrinsic evidence
> involving the circumstances surrounding execution of the
> contract, the subject matter of the contract, the objects to
> be accomplished, and the conduct of the parties.  Absent
> an ambiguity in the contract, the parties' intentions must
> be discerned from the four corners of the instrument
> without resort to extrinsic evidence.  A contract
> is ambiguous if a reasonable person would find it
> susceptible to different or inconsistent interpretations.
> The fact that one party may have intended different
> results, however, is insufficient to construe a contract at
> variance with its plain and unambiguous terms.
> Generally, the interpretation of a contract, including
> determining whether a contract is ambiguous, is a
> question of law for the courts and is subject to *de
> novo* review.  However, once a court determines that a
> contract is ambiguous, areas of dispute concerning the
> extrinsic evidence are factual issues and construction of
> the contract become subject to resolution by the fact-
> finder.

*Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App.

2002)  (emphasis added) (citations omitted).  With these standards in mind, we

now turn to the facts and law at issue here.

## ANALYSIS

American raises three arguments on appeal:  1) the circuit court erred

by concluding that the Lease expired; 2) the court erroneously concluded that

American had no right to cure; and 3) American owns the tower.  Each will be

-3-

discussed in turn. However, it is first necessary to provide some additional background. Paragraph 25 of the Lease states that after the initial fifteen-year term,

> the Lessee shall have the right to renew and extend the lease term for an additional 10-year term, and the Lessee shall pay the Lessors the sum of One Hundred Fifty Dollars ($150.00) per month during that extended 10-year lease term . . . . The monthly rental provided for herein during any renewed and extended lease terms shall be in addition to all other obligations of the Lessee as set forth herein for the initial 15-year lease term, and shall be deemed additional consideration for the renewals and extensions. In the event the Lessee opts to renew and extend the lease, as provided for herein, all terms and conditions set forth in this Lease and Easement Agreement shall likewise apply during any renewal and extension.

The circuit court applied this provision as follows:

> the language in section [25] provides the Lessee must "opt" to renew, and the way the Lessee does that is by paying rent: the rent is the "additional consideration" for the renewal. Since the rent was not paid, there was no option to renew exercised. The lease expired after the initial term in 2011.
>
> There is and was no right to cure activated for American under the Consent to Sublease, as there was an expiration of the 1996 Lease and not a default thereunder. All of American's rights under the Consent to Sublease are triggered if there is a "default," not an expiration.

In support, the court cited *Alabama Farmers Cooperative Inc. v. Jordan* for the proposition that renewal requires "some outward manifestation of that intent [to

-4-

renew] . . . for a court to conclude that the parties' relative legal positions are not governed by Kentucky's default rule." 440 Fed. App'x 463, 466 (6th Cir. 2011); s*ee also Klein v. Auto Parcel Delivery Co.*, 234 S.W. 213 (Ky. 1921) (holding that lessee effectively renewed a lease, containing an option to renew by continuing occupancy and paying increased rent). Because no such manifestation of intent occurred here, the circuit court concluded that the Lease became a year-to-year holdover tenancy governed by KRS[1] 383.160(1). Accordingly, the Lease was extended on a year-to-year basis until the tenant "abandons the premises, is turned out of possession, or makes a new contract" with the landlord. *Smithland Farms, LLC, v. Riverside Developers*, LLC, 566 S.W.3d 566, 570 (Ky. App. 2018). In the present case, Lessors' counsel notified Lessee by letter that Lessors were terminating the year-to-year tenancy effective June 12, 2020. As a result, the circuit court ordered that Lessee vacate the premises, and awarded them the tower pursuant to Section 15 of the Lease.

American argues that the Lease automatically renewed twice; once in 2011, and again in 2021. In support, it cites *Weber v. C&C Dry Goods Company*, 69 S.W.2d 731 (Ky. 1934); and *Cain v. Lawrence Drug Company*, 29 S.W.2d 550, 551 52 (Ky. 1930). However, American has not cited any automatic renewal clause in the Lease. Furthermore, *Weber* and *Cain* and are distinguishable. We

---

[1] Kentucky Revised Statutes.

agree with the circuit court that in both of those cases, additional consideration was required to be paid at the time of extension. In both cases, additional rent was paid at that time, indicating an overt act. The relevant terms of extension in those cases are also different from the present case, as well are the facts.[2]

To be clear, there is no indication that any Lessee paid Lessors any monetary rent after the termination of the initial Lease term, as is expressly required by the Lease's renewal provision under Paragraph 25. Even if some other form of consideration had been provided, it would not satisfy Paragraph 25. And in the absence of an express clause indicating that time was of the essence, it is a "long established and universally declared rule that in such contracts (creating options) time is of the essence thereof both in law and equity . . . ." *Rounds v. Owensboro Ferry Co.*, 69 S.W.2d 350, 354 (Ky. 1934). *See also Good v. Evans*, 178 S.W.2d 600, 601 (Ky. 1944); 3 Ky. Prac. Real Estate Transactions § 5:11 (2023); and 52 C.J.S. § 83 (2024) ("If the lessee's covenant with the subtenant is conditioned on the lessee's obtaining an extension or renewal, the subtenant acquires no right unless his or her lessee obtains such renewal or extension.").

---

[2] Citation to *Weber* and *Cain* by Kentucky's Courts has been nearly nonexistent. Not a single case has cited these decisions since the 1976 creation of the unified court system. Thus, to the extent these decisions are applicable here, they provide minimal guidance and need not be addressed further. Instead, our analysis will be guided primarily by the terms of relevant contracts at issue in the present case. *See Cantrell Supply, Inc.*, 94 S.W.3d at 385.

The preceding reasoning applies similarly to American's second argument that they had the right to cure. American cites no Lease provision permitting them to cure. And we agree with the circuit court, that while the Consent to Sublease provides a right to cure, the Lease had expired; thus any right to cure provision was inoperable. American's argument here also strains the meaning of the term "cure," which at the time the suit was filed, would have been nearly a decade of back rent.

As to Lessee's final argument on appeal, that it owns the tower, Section 15 states that "[u]pon expiration of the lease term . . . Lessor shall have the option to require that the tower be left on the premises, and in such event, the Lessor shall become the owner thereof . . . ." And pursuant to the sublease, "[a]ll provisions of the [1996] Lease shall apply to this Sublease . . . ." The unambiguous language of Section 15 entitles Lessors to ownership, no matter if that remedy was not expressly requested in the Complaint, which does include "[a]ny and all other relief, both legal and equitable, to which [Lessors] may be entitled."

It is a valid concern that there may have been some unreasonable delay on behalf of Lessors. Laches and estoppel were pled as an affirmative defense. However, those potential arguments have not been sufficiently developed on appeal. Moreover, it appears that American, Freedom, and its predecessors, are

sophisticated corporate entities, presumably well-versed in managing real estate agreements.[3]  In any event, in the absence of clear and binding authority to the contrary, we must apply the plain language of the relevant Lease provisions. Therefore, we cannot conclude that the circuit court erred in this instance.

## **CONCLUSION**

For the foregoing reasons, we AFFIRM Livingston Circuit Court's Order Denying Defendant's Motion for Summary Judgment and Granting Plaintiffs' Motion for Summary Judgment entered on July 5, 2023.


ALL CONCUR.

BRIEFS FOR APPELLANT:

Colby A. Kingsbury, *pro hoc vice*
Chicago, Illinois

Machen Picard Bihrle
Minneapolis Minnesota

BRIEF FOR APPELLEES:

David L. Kelly
Paducah, Kentucky

---

[3]  To be clear, however, there is no indication that American failed to pay Freedom or its predecessors under the terms of the sublease.  Rather, American alleges that it was Freedom and/or its predecessors who failed to pay Lessors.  It also appears that Lessors had actual knowledge that the tower had been sold to American.