RENDERED: MAY 28, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1889-MR

ETHICARE ADVISORS, INC.                          APPELLANT


                  APPEAL FROM FRANKLIN CIRCUIT COURT
v.              HONORABLE PHILLIP J. SHEPHERD, JUDGE
                    ACTION NO. 15-CI-01144


NANCY G. ATKINS, IN HER
CAPACITY AS COMMISSIONER
OF THE KENTUCKY DEPARTMENT
OF INSURANCE AND LIQUIDATOR
OF KENTUCKY HEALTH
COOPERATIVE, INC.                      APPELLEE


AND              NO. 2020-CA-0024-MR


NANCY G. ATKINS, IN HER CAPACITY AS
LIQUIDATOR OF KENTUCKY HEALTH
COOPERATIVE, INC.                  CROSS-APPELLANT

CROSS-APPEAL FROM FRANKLIN CIRCUIT COURT
v.                    HONORABLE PHILLIP J. SHEPHERD, JUDGE
ACTION NO. 15-CI-01144


ETHICARE ADVISORS, INC.                        CROSS-APPELLEE


OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; CALDWELL AND COMBS, JUDGES.

CLAYTON, CHIEF JUDGE:  EthiCare Advisors, Inc. (EthiCare) appeals from a

Franklin Circuit Court opinion and order which affirmed in part and reversed in

part the Referee's proposed findings of fact, conclusions of law and recommended

order pursuant to Kentucky's Insurers Rehabilitation and Liquidation Law (IRLL),

Kentucky Revised Statutes (KRS) 304.33-010, *et seq*.  EthiCare entered into a

contract to provide services for Kentucky Health Cooperative, Inc. (KYHC), a

private, not-for-profit health maintenance organization.  KYHC was subsequently

placed into Rehabilitation and then into Liquidation under the IRLL.  The disputed

issues on appeal concern the amount and priority level of EthiCare's claim against

KYHC's estate.  Nancy G. Atkins, in her capacity as Liquidator of KYHC, has

filed a cross-appeal.

## Background

EthiCare reduces the costs of health insurers and cooperatives, such as KYHC, by negotiating claims settlements on their behalf with healthcare providers. On April 1, 2015, KYHC and EthiCare entered into a Master Services Agreement (MSA) under which EthiCare agreed to negotiate claims settlements for KYHC in exchange for 12.5% of the savings generated by EthiCare's services. In its description of EthiCare's services, the MSA defined "Negotiated Claims Settlement" as follows:

> A signed release between EthiCare Advisors and the healthcare provider which lowers [KYHC's] reimbursement. Such settlement could be a single patient agreement for one prior date of service, multiple prior dates of services or future dates of service. . . . Our fee for this service is a percentage of savings determined by calculating the difference between the allowable before [EthiCare's] settlement with the allowable after [EthiCare's] settlement and multiplying it by our rate.

Elsewhere, the MSA provided:

> Negotiated Claims Settlement™ means the settlement of medical claims including a signed release between EthiCare Advisors and the healthcare provider which lowers [KYHC's] reimbursement. . . . [KYHC] agrees to pay [EthiCare] 12.5% of savings generated by [EthiCare] for out-of-network claims and 12.5% of realized savings generated by [EthiCare] for in-network claims. Savings are calculated by determining the difference between the allowable before [EthiCare's] settlement with the allowable after [EthiCare's] settlement.

Several months later, the Commissioner of the Department of Insurance filed a verified petition for Rehabilitation against KYHC, upon finding that it was, or was about to become, insolvent. On October 29, 2015, the Franklin Circuit Court entered an order granting the petition, placed KYHC into Rehabilitation and appointed the Commissioner as Rehabilitator. The court's Rehabilitation order required vendors such as EthiCare to continue complying with their contracts during the Rehabilitation period, stating that "[a]ll third party vendor contracts and provider contracts with KYHC shall continue to be maintained and administered according to the terms of the agreements between KYHC and the third party vendor or provider, regardless of any prior notice of or attempt at cancellation, until such time as the Rehabilitator or this Court directs otherwise, and any action by the parties to the contrary is stayed by entry of this order[.]"

The Rehabilitator sent a form letter with a copy of the Rehabilitation order to all KYHC's service providers, including EthiCare, notifying them of the Rehabilitation and advising them that the order "specifically requires all third party vendor contracts to continue to be maintained and administered according to the terms of the agreements regardless of any prior notice or attempt at cancellation." Accordingly, EthiCare continued to provide negotiated settlement services for

KYHC and in December 2015 and January 2016 settled nine claims for which it submitted invoices totaling $403,600.47.

On January 15, 2016, the circuit court found that KYHC was insolvent as defined by the IRLL, KRS 304.33-030(18). It entered an order placing KYHC into Liquidation and appointed the Commissioner as Liquidator. The Liquidation order authorized the Liquidators "to pay as administrative expenses, all Special Deputies' fees, attorneys' fees, accounting fees, consulting fees, the fees of other service providers and other administrative expenses in connection with the Rehabilitation and Liquidation of KYHC from the assets of KYHC's estate under the general supervision of this Court." The Liquidation order also explained the proof-of-claim process under the IRLL.

At that time, KYHC had not paid EthiCare for the services it had performed in December 2015 and January 2016 and submitted for payment. EthiCare filed a timely proof of claim seeking payment in the amount of $403,600.47 as a Class 1 administration cost pursuant to KRS 304.33-430. Under the IRLL, this is the category of claims with the highest priority.

The Deputy Liquidator sent a final determination letter on December 14, 2018, which approved EthiCare's claim in the reduced amount of $188,080.53, which represents the amount derived from the negotiated claims that KYHC had actually paid to the providers. Additionally, the Liquidator classified EthiCare's

claim as a Class 6, rather than Class 1, administrative cost. Class 6 is a residual classification for "[a]ll other claims including claims of the federal or any state or local government, not falling within other classes under this section." KRS 304.33-430(6). This classification significantly reduced the likelihood that EthiCare's claim against KYHC would be satisfied.

EthiCare filed an objection to the final determination letter and a hearing was held before the Referee. The Referee approved the Deputy Liquidator's determination that EthiCare's claims fell within Class 6. Based on his interpretation of the MSA, however, the Referee disagreed with the reduction of EthiCare's claim to only those claims that KYHC had actually paid. The Referee concluded that "[t]here is no persuasive proof advanced or found in the evidence that EthiCare's contractual rights were conditioned by the actual payment by KYHC of the reduced claims successfully negotiated on its behalf by EthiCare. . . . EthiCare had done all it was required to do under its agreement – negotiate and obtain reduced claims from the providers on behalf of KYHC. Having done so, EthiCare's own claim should not have been reduced by circumstances beyond its control."

Thus, the Referee's recommended order approved EthiCare's claim for the full amount of $403,600.47 and assigned the full amount Class 6 priority.

EthiCare then appealed the Referee's ruling to the Franklin Circuit Court, which issued an opinion and order which affirmed the Referee's holding that EthiCare had a claim for the full amount of $403,600.47. It reversed the Referee's characterization of the entire amount as Class 6, however, instead ruling that the portion of that amount which was derived from the renegotiated claims that were actually paid by KYHC, $188,080.53, should be classified as a Class 1 administrative cost. This appeal and cross-appeal followed.

**Standard of Review**

Resolving this appeal involves the interpretation of the MSA entered into by EthiCare and KYHC. "[I]n the absence of ambiguity, a written instrument will be strictly enforced according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (internal quotation marks and footnote omitted). "Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002).

This appeal also involves the interpretation of the provision in the IRLL which describes and prioritizes the classes of claims for purposes of

distribution from the estate, KRS 304.33-430. This requires us to "first look to the plain language of the statute to ascertain and give effect to the intent of the General Assembly." *Barnett v. Central Kentucky Hauling, LLC*, 617 S.W.3d 339, 341 (Ky. 2021) (citations and internal quotation marks omitted). "Only if the language is unclear do we consider the legislatures' [sic] unspoken intent, the statute's purpose, and the broader statutory scheme." *Id*. at 341-42. Because "[t]he interpretation of statutes is a matter of law which we review *de novo* . . . [w]e afford no deference to the statutory interpretations of the lower courts." *Blackaby v. Barnes*, 614 S.W.3d 897, 901 (Ky. 2021) (citations and internal quotation marks omitted).

## Analysis

Our analysis requires us to address two questions: first, what is the total amount of EthiCare's claim against the KYHC estate; and second, into which class, or classes, does its claim fall for purposes of priority under the IRLL.

### i. The amount of EthiCare's claim

EthiCare argues that under the unambiguous terms of the MSA, once EthiCare had signed the negotiated claims settlements with the healthcare providers, it had done all it was required to do under the MSA in order to be entitled to its 12.5% share of the full amount of the savings it had negotiated for KYHC. The Referee and the circuit court agreed that EthiCare is owed the full

-8-

amount of $403,600.47 for the services it performed in December 2015 and January 2016 pursuant to its contract with KYHC, regardless whether or not KYHC actually paid the underlying claims.

The Commissioner argues that the Liquidator properly reduced the total amount of EthiCare's claim from $403,600.47 to $188,080.53, as this lower amount reflects the reality that KYHC will never fully benefit from the settlements EthiCare negotiated on its behalf. The Commissioner points out that since the commencement of the Liquidation on January 15, 2016, KYHC has been prohibited from paying any claims and consequently cannot meet the prompt payment requirements of some of the negotiated settlements, and therefore some providers will not honor these negotiated discounts. They contend that the Liquidator's final determination was based upon the value that KYHC may ultimately receive as a result of EthiCare's claims settlement services and reflects the statutory discretion the Liquidator has to make such determinations for the benefit of policyholders. Essentially, the Commissioner contends it is inequitable to allow EthiCare the full amount of its claim because KYHC has not realized any of the negotiated savings and has been prohibited from paying the underlying claims until the court enters an Order of Distribution.

These concerns may be well founded, but do not alter the amount of EthiCare's claim. EthiCare performed its part of the MSA with KYHC and

complied with the directive of the Rehabilitation order in continuing to provide its services to KHYC during the Rehabilitation period. The amount of EthiCare's claim should not be dependent on circumstances beyond its control or on KYHC's ability to pay.

## ii. The characterization of EthiCare's claim

KRS 304.33-430 provides eleven classes of claims, in descending order of priority, that govern the distribution of the Liquidated insurer's estate. The parties agree that if EthiCare's claim does not fall within the first class, it should be placed in the sixth, "residual" class.

The first class encompasses "administration costs," which are defined as follows: "The costs and expenses of administration, including but not limited to the following: **the actual and necessary costs of preserving or recovering the assets of the insurer**; compensation for all services rendered in the liquidation; any necessary filing fees; the fees and mileage payable to witnesses; and reasonable attorney's fees." KRS 304.33-430(1) (emphasis added). At issue is whether EthiCare's claim qualifies as one of the "actual and necessary costs of preserving or recovering the assets" of KYHC.

The Commissioner argues that no part of EthiCare's claim qualifies as a Class 1 administrative expense because this class includes only expenses incurred during the Liquidation period, whereas these expenses were incurred during the

-10-

preceding Rehabilitation period. Although there is no Kentucky case law addressing this issue, the Commissioner points to case law from other jurisdictions interpreting identical provisions of state insurance codes. For instance, the Supreme Court of New Hampshire held that legal services provided by a law firm prior to the liquidation of a home insurance company did not qualify as "administration costs" because the statutory text draws a clear distinction between the period before and after the order to liquidate. *In re Liquidation of Home Ins. Co.*, 158 N.H. 396, 399, 965 A.2d 1143, 1145 (2009). The Court explained that the term "administer" (and by extension "administration") "appears within the statutory scheme only in relation to authorized activities undertaken in furtherance of the liquidation. . . . Accordingly, general litigation services rendered and payable prior to the liquidation do not constitute administration costs." *Id.* (citations omitted).

The Referee rejected EthiCare's claim on similar grounds, stating that the statute clearly limits the types of claims that may be characterized as administration costs to those "actual and necessary" for the administration of the estate, including costs incurred by the Liquidator in recovering assets of the estate. The Referee concluded that "[b]ecause EthiCare's claims all arose prior to the liquidation, they necessarily could not have been costs related to either the administration of the liquidation or to preserve the assets of the liquidation estate."

The Referee held that the priority framework of KRS 304.33-430 does not apply until there is a Liquidation and does not apply to work performed during the Rehabilitation period. As the underlying policy justification for his ruling, the Referee pointed out that many vendors provided services to KYHC pursuant to a contract, including the pharmacy benefits manager, software vendors, and healthcare providers, and that these services, while important to KYHC, were not essential to the operation of the Rehabilitation or Liquidation and cannot be classified as administrative expenses. The Referee concluded that if EthiCare's claim was adjudicated as a Class 1 administrative cost, it would be difficult to conceive of a claim that would not be a Class 1 administrative cost.

By contrast, the Franklin Circuit Court construed the language of the definition as not requiring "the actual and necessary costs of preserving or recovering the assets of the insured" to be incurred during the Liquidation to qualify as a first priority claim. Because EthiCare's negotiated claims services during the Rehabilitation period lowered the outstanding monetary liability of KYHC and thus preserved KYHC's assets, the circuit court reasoned that the claims qualified as an administration cost. The court further held, however, that only the claims negotiated by EthiCare which KYHC actually paid represented a benefit to KYHC and therefore only that amount, $188,080.53, qualified as a Class

administrative expense whereas the remainder of the claim fell into the residual category.

Even if we accept the circuit court's interpretation of the first category of claims to include costs incurred during Rehabilitation, administration costs by definition cannot include the normal, day-to-day expenses associated with a course of business that would occur regardless of whether a Rehabilitation or Liquidation was underway. Our interpretation of the phrases in a statute must be logical in context. *Pearce v. University of Louisville, by and through its Board of Trustees*, 448 S.W.3d 746, 749 (Ky. 2014). We agree with the Referee that administration costs must by definition be those "actual and necessary" to the administration of the estate. EthiCare was required to perform its negotiated claims services for KYHC under the terms of its MSA. Although the Rehabilitation order specifically directed vendors to continue providing services to KYHC, it did not thereby transform EthiCare's contractually mandated services into a cost of administration. EthiCare does not point to any section of the MSA which released it from continuing to perform its services pursuant to the contract in the event of a Rehabilitation or a Liquidation.

**Conclusion**

For the foregoing reasons, the opinion and order of the Franklin Circuit Court is affirmed insofar as it held that the total amount of EthiCare's claim

against the estate is $403,600.47.  Its holding that $188,080.53 of that amount is an administration cost under KRS 304.33-430(1) is reversed and the matter is remanded for entry of an order designating the entire amount of $403,600.47 as a residual claim under KRS 304.33-430(6).

ALL CONCUR.

BRIEFS FOR APPELLANT/
CROSS-APPELLEE:

Jonathan D. Goldberg
Jan M. West
Mark J. Sandlin
Prospect, Kentucky

BRIEFS FOR APPELLEE/
CROSS-APPELLANT:

Paul C. Harnice
Sarah J. Bishop
Matthew D. Wingate
Frankfort, Kentucky